Jerome **ROBINSON–SMITH**, Plaintiff,

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY,** Defendant.

**No. CIV.A. 01–1340 PLF.**

United States District Court, District of Columbia.

July 1, 2004.

Charles Edgar Tompkins, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for Plaintiff and Claimants.

Michael Hausfeld, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Thomas V. Urmy, Jr., Todd Heyman, Shapiro Haber & Urmy LLP, Boston, MA, for Plaintiff.

Bruce Stephen Harrison, Shawe & Rosenthal, Baltimore, MD, for Defendant.

Michele A. Gallagher, Anderson Kill & Olick, LLP, Washington, DC, for Movant.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion for summary judgment and plaintiff's motion for summary judgment on the issue of liability. The Court heard oral argument on the motions on May 19, 2004. Upon consideration of the parties' motions for summary judgment, the oppositions, the replies, and the arguments of counsel, the Court concludes that plaintiff's motion for summary judgment on the issue of liability should be granted and defendant's motion for summary judgment should be denied.

## II. BACKGROUND

### A. *Posture of the Case*

Plaintiffs allege that defendant Government Employees Insurance Company ("GEICO") has, since at least June 15, 1998, violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), by failing to pay plaintiff Jerome Robinson–Smith and all other persons employed as Auto Damage Adjusters and Resident Auto Damage Adjusters time and one-half their regular rates of pay for all hours worked in excess of 40 hours per week. *See* Complaint at ¶ 1. These individuals have been classified as exempt by GEICO. *See id.*

The Complaint is brought as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of plaintiff Jerome Robinson–Smith and all other persons who are or have been employed by defendant anywhere in the United States as Auto Damage Adjusters or Resident Auto Damage Adjusters between June 15, 1998 or November 16, 1998, respectively, and the date of final disposition of this action. *See* Complaint at ¶ 2. Section 216(b) provides that an action to recover liability for violations of Section 206 or Section 207 of the FLSA may be maintained by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). An employee does not become a party plaintiff to such an action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Over 270 employees have filed consents in this case.

Plaintiff alleges that his job has been (1) to inspect damaged automobiles as to which a claim for indemnity under policies sold by the defendant has been made or is expected to be made; (2) to enter a description of the damage into a GEICO computer; (3) to offer payment for the damage in accord with the amounts provided by the GEICO computer system; and (4) to perform related tasks such as photographing damaged vehicles and filling out forms provided by the defendant relating to their appraisals. *See* Complaint at ¶ 9. Plaintiff received a salary and the amount of his pay did not depend on the number of hours worked. *See id.* at ¶ 10. Plaintiff regularly worked in excess of 40 hours per week. *Id.*

For the Court's convenience, plaintiff has consolidated all of the statements of

facts and the responses thereto made by both plaintiff and defendant. The Court notes that although there are lengthy oppositions to many of the asserted facts, most of them consist solely of the legal implications of the asserted facts. "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." L. Civ. R. 7(h). Because the material facts regarding plaintiff's job duties are essentially uncontested, there are no genuine issues of material fact, and resolution of the issue of liability on cross-motions for summary judgment therefore is appropriate.

### B. Uncontested Material Facts

GEICO underwrites and sells automobile insurance directly to consumers. *See* Plaintiff's Consolidated Statement of Facts Presented by Both Plaintiff and Defendant, and Plaintiff's Statement of Facts in Reply to Defendant's Statement of Facts in Support of its Motion to Dismiss ("Con. Stmt.Facts") at 1. GEICO also services insurance policies sold by other GEICO entities. *See id.* at 102. GEICO receives claims on less than ten percent of its policies. *See id.* at 4. Auto damage claims account for 60 percent of GEICO's loss payments. *See id.* at 14.

GEICO has a "Claims Home Office" which is responsible for the policy and oversight of the claims function for GEICO. *See* Con. Stmt. Facts at 104. The auto damage division establishes auto damage policies. *See id.* at 106. GEICO regions are called "profit centers," and there is an auto damage director for each "profit center." *See id.* at 107. Auto damage adjusters, plaintiffs in this case, report to supervisors who report to auto damage managers who report to auto damage directors. *See id.* at 110.

Auto damage adjusters assess, negotiate and settle automobile damage claims made to GEICO. *See* Con. Stmt. Facts at 15. Level I adjusters, such as plaintiff, have settlement authority up to $10,000. *See id.* at 15. Level II adjusters have settlement authority up to $15,000. *See id.* An auto damage adjuster can recommend settlements in excess of his settlement authority. *See id.* at 17. The majority of adjusters' time is spent inspecting vehicles, writing estimates, and traveling to and from inspection sites. *See id.* at 142.[1] The adjusters do not determine whether GEICO is liable for a given claim and do not have the authority to deny liability, but they do determine the value of a claim once it has been determined that the claim should be paid. *See id.* at 143, 147. Adjusters may stop payment on certain damage items if they determine that those damage items were not caused by the accident. *See id.* at 147.

When evaluating a damaged part, the adjuster first determines whether the damage was caused by the accident. *See id.* at 25. If the damage is accident related, the adjuster assesses the cost of fixing the damage. *See id.* at 28. The adjuster

---

1. Throughout the consolidated statement of material facts there is significant debate as to the amount of negotiation done by adjusters with claimants and body shops. *See, e.g.,* Con. Stmt. Facts at 142, 202. Defendant maintains that negotiations with body shops take place while estimates are being written and that total loss conversations are conducted by phone while driving. *See id.* at 142.

Defendant maintains that there is "a lot" of negotiation involved in partial loss claims. *See, e.g., id.* at 202. Plaintiffs maintain that the majority of adjusters' time is not spent negotiating. *See id.* at 10. The parties do agree that approximately 20 percent of claims are total losses and that 70 percent of those claims involve no negotiation at all. *See id.* at 203.

must also determine whether the vehicle has "hidden damage" which cannot be detected without disassembling the car. *See* Con. Stmt. Facts at 60.

GEICO auto damage adjusters write estimates using software called "Pathways," which is licensed by Certified Collateral Corporation ("CCC") and is installed on the adjusters' laptop computers. *See* Con. Stmt. Facts at 21. The software uses databases to locate information on items such as parts prices. *See id.* at 22. Paint times and material costs are stored in the computers. *See id.* at 179. The information in the computer is essentially the same as the information GEICO adjusters previously looked up in books. *See id.* at 22. The software does provide certain prompts to aid the adjusters. For example, the software indicates when a vehicle becomes a total loss, when a more cost effective part is available, and when it would be more cost effective to replace a part. *See id.* The adjuster must determine, without the aid of computer programs, formulas or tables, the amount of labor time that a repair will require. *See id.* Adjusters make this determination based on their training and knowledge. *See id.* at 33. Procedural pages are stored in the computer, however, and describe the repair procedures to be followed in repairing parts. *See id.* at 173. If the auto damage adjuster makes a manual entry, or an entry which conflicts with the software's suggestions, the software program will mark the entry with an asterisk or pound sign. *See id.* at 154.

If the adjuster determines that a part can be repaired safely, the adjuster determines whether the part should be repaired or replaced. *See* Con. Stmt. Facts at 31. If a customer requests replacement of a part even though repair is appropriate, an auto damage adjuster would grant the request without consulting his supervisor if it

were clear that the discrepancy was sufficiently small that the supervisor would approve it. *See id.* at 35.

If the adjuster determines that a part must be replaced, then he must determine what type of part to use. *See* Con. Stmt. Facts at 38. A part can be replaced with a new part made by the manufacturer of the car ("OEM part"), a new part made by someone else ("aftermarket part"), or a non-damaged used OEM part ("LKQ part"). *See id.* GEICO has policies which dictate use of OEM parts with respect to certain parts of cars. *See id.* at 246. The adjuster must determine what type of part to use and whether to take a depreciation deduction when replacing a worn part with a new one. *See id.* at 38, 41. Depreciation guidelines are set out in the Auto Damage Handbook, but in some cases the depreciation determination is left to the discretion of the adjuster. *See id.* at 186. For example, the Auto Damage Handbook states that "carpets, floor mats, upholstery, headliners, convertible tops and other soft trim will be depreciated based on the pre-loss condition as established by the adjuster." *Id.* at 45 (quoting Auto Damage Handbook at 115). The parties agree that GEICO has guidelines for these types of decisions, but disagree on the amount of discretion left to the adjusters. *See id.* Working with repair shops, there is some leeway, but auto damage adjusters must still conform with GEICO guidelines. *See id.* at 50–51.

Adjusters also must determine whether the vehicle is a total loss. *See* Con. Stmt. Facts. at 59. The computer software will flag a vehicle as a total loss if the estimated repair cost exceeds 75 percent of the market value. *See id.* at 156. If a vehicle is a total loss, the adjuster orders a valuation estimate from CCC and then makes certain additions and subtractions pursuant to GEICO policies and guidelines to

determine the final value. *See id.* at 62. When owners want a higher total loss settlement, an auto damage adjuster would not consult his supervisor, so long as he knew the supervisor would approve the additional credit. *See id.* at 67. The frequency with which adjusters call their supervisors for approval depends on the adjuster. *See id.* at 78. About once a month, a supervisor rides along with the adjuster for feedback and training purposes. *See id.* at 81.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir. 1989).

On a motion for summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required

to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must have more than "a scintilla of evidence to support [its] claims." *Freedman v. MCI Telecommunications Corp.,* 255 F.3d 840, 845 (D.C.Cir. 2001); *see Ben–Kotel v. Howard University,* 319 F.3d 532, 536 (D.C.Cir.2003).

### B. Fair Labor Standards Act

■ Plaintiff argues that he is not an exempt employee under the Fair Labor Standards Act and thus is entitled to unpaid overtime and other damages. *See* Plaintiff's Motion for Summary Judgment and Request for Hearing on Motion ("Pl. Mot.") at 1. Section 207(a) of the Fair Labor Standards Act provides that employees are to be paid at a rate of one and one-half times their "regular rate" for hours worked in excess of 40 in one week, unless they are subject to certain exemptions enumerated in Section 213. 29 U.S.C. § 207(a). Section 213 explains that the provisions of Section 207 do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Defendant argues that plaintiff falls into the "administrative" exemption and thus is not entitled to overtime pay. *See* Defendant's Motion for Summary Judgment ("Def.Mot.") at 16. The exemptions enumerated in Section 213 "are to be narrowly construed against the employers seeking to assert them" and are to be "limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Kanowsky,* 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *see also*

*Prakash v. American University*, 727 F.2d 1174, 1178 (D.C.Cir.1984) (noting that the "bona fide professional capacity" exemption is to be construed narrowly).

The Department of Labor has promulgated regulations to elaborate on the criteria for the administrative exemption. *See* 29 C.F.R. § 541 (2003). These regulations currently provide a "short test" for employees who earn more than $250 per week and are paid on a salary basis. *See id.*[2] Under the short test, an employee employed in a bona fide administrative capacity is one whose primary duty consists of (1) "[t]he performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers," and (2) the performance of work "requiring the exercise of discretion and independent judgment." *See* 29 C.F.R. § 541.2(a), (e).

On April 23, 2004, revisions to these regulations were approved as a final rule. Although these new regulations are not effective until August 23, 2004, they are instructive with respect to the Department of Labor's interpretation of the requirements of the administrative exemption. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22,122 (April 23, 2004) (to be codified at 29 C.F.R. pt. 541) ("August 2004 Regulations"). The general criteria for employees employed in a bona fide administrative capacity are essentially the same under the August 2004 Regulations as under the current regulations. *See id.* at 22,262.[3]

## C.  Test for Administrative Exemption

■ Both the Department of Labor in its regulations and the courts explain that, in accordance with the test described above, an employee must meet three requirements before he or she will be deemed "exempt" from the overtime pay provision of the Fair Labor Standards Act: (1) the salary requirement; (2) the requirement that the employee's primary duty consists of work directly related to management policies or general business operations; *and* (3) the requirement that the employee's primary duty includes the exercise of discretion and independent judgment. If an employee meets all three requirements, then he or she is properly classified as exempt under the administrative exemption and is not entitled to overtime pay.

### 1.  Salary Test

■ The parties agree that at the time of his resignation plaintiff earned $41,000 per year and thus satisfies the salary requirement for administrative exemption. *See* Con. Stmt. Facts at 8. Defendant, at oral argument, repeatedly maintained that plaintiff's salary, at almost twice the $23,660 salary that will be the cut-off for automatic non-exemption as of August 2004, is a clear indicator that plaintiff is an exempt employee—in other words, that he is not entitled to overtime pay. The Court disagrees. Although it is true that the Department of Labor's final rule noted that "the salary paid to an employee is the 'best single test' of exempt status," it went on to explain that the salary test simplifies enforcement "by providing a ready method of screening out the

---

2.  There is no dispute that the employees in this case earn a salary in excess of $250 per week and that the short test therefore is applicable. *See* Pl. Mot. at 14 n. 5.

3.  Although the Court refers at several points to clarifications contained in the August 2004 Regulations, the outcome of this case would have been identical had the August 2004 Regulations not been considered.

obviously nonexempt employees." August 2004 Regs. at 22,165. An employee whose salary is below the level set by the regulations therefore is automatically non-exempt, and thus is entitled to overtime pay, whereas an employee whose salary is above the minimum level must be scrutinized further.

The new regulations define "highly compensated employees," those who can be considered almost automatically exempt, as those earning total annual compensation of $100,000. *See* August 2004 Regs. at 22,269. Plaintiff's salary therefore establishes him as neither automatically exempt nor automatically non-exempt. The Court is not persuaded that plaintiff's $41,000 salary carries extraordinary weight when determining whether plaintiff is exempt. If the Department of Labor had intended the salary level to be the dispositive factor, it would not have established in its new regulations an almost $80,000 salary window within which the test for administrative exemption is to be applied.

### 2. Directly Related to Management Policies or General Business Operations

The primary duty of an employee exempt from the overtime pay requirement must consist of "[t]he performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers." 29 C.F.R. § 541.2(a), (e). The Code of Federal Regulations specifically notes that "claim agents and adjusters" may—and thus, by implication, in some cases may not—satisfy this requirement. The title of a job does not by itself determine whether or not the employee bearing it is exempt. "Titles can be had cheaply," and are "of little or no assistance in determining the true importance of an employee to the employer or his exempt or nonexempt status." 29 C.F.R. § 541.201(b)(1).

Because the title of a job is not dispositive, it is necessary to go through the analysis provided in the Code of Federal Regulations to determine whether a given employee performs work that is "directly related to management policies or general business operations." According to the regulations, the work must be "of substantial importance to the management or operation of the business." 29 C.F.R. § 541.205(a). This includes "those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work." 29 C.F.R. § 541.205(a). The August 2004 Regulations clarify the rather vague "production" language of the current regulations to say that "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *See* August 2004 Regs at 22,262–63. The current regulations then explain that "servicing" a business may include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(a). Servicing work is not limited to those who formulate policies, but extends to those "whose responsibility it is to execute or carry ... out [the policies]." *Id.* at § 541.205(c). If an employer cannot demonstrate that its employee's duties satisfy this requirement, then that employee is not exempt and is entitled to overtime pay.

### 3. Discretion and Independent Judgment

To qualify for the administrative exemption, an employee's work also must include

the exercise of discretion and independent judgment. *See* 29 C.F.R. § 541.3(e). The Code of Federal Regulations defines the phrase "the exercise of discretion and independent judgment" to mean that the person "has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." 29 C.F.R. § 541.207(a). It "involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." *Id.*

■ The current regulations note that the term is often misapplied to situations involving "the use of skill in applying techniques" and to "decisions relating to matters of little consequence." 29 C.F.R. § 541.207(b). The regulations caution that "[a]n employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow" is not exercising discretion and independent judgment "even if there is some leeway in reaching a conclusion." *Id.* at § 541.207(c)(1). In the context of employees that "grade" a certain commodity for which there are established standards, for example, the regulations note:

Often, after continued reference to the written standards, or through experi-

ence, the employee acquires sufficient knowledge so that reference to written standards is unnecessary. The substitution of the employee's memory for the manual of standards does not convert the character of the work performed to work requiring the exercise of discretion and independent judgment.

29 C.F.R. § 541.207(c)(3). Thus, the use of skill in the work performed or the decision made does not necessarily mean that "discretion and independent judgment" is being exercised.

The August 2004 Regulations specifically note that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." August 2004 Regs. at 22,-263. The new regulations go on to explain that exempt status is not available for employees who simply apply these techniques "within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." *Id.* at 22,273.[4] Once again, if the employer cannot demonstrate that its employee's duties satisfy this requirement, then the employee is not exempt and is entitled to overtime pay.

---

4. The August 2004 Regulations contain a non-exhaustive list of the type of factors to consider when determining whether an employee exercises discretion and independent judgment. They include:

whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling of complaints, arbitrating disputes or resolving grievances.

August 2004 Regs. at 22,263.

### D. Status of GEICO Auto Damage Adjusters Under the Relevant Test

■ The regulations promulgated by the Department of Labor to interpret the FLSA's use of the term "bona fide administrative capacity" are owed deference by the courts because they contain the agency's reasonable interpretation of an ambiguous statute. *See Christensen v. Harris County,* 529 U.S. 576, 586, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (Under FLSA, court "must give effect to [the Department of Labor's] regulation containing a reasonable interpretation of an ambiguous statute"); *see also Mortensen v. County of Sacramento,* 368 F.3d 1082, 1086 (9th Cir. 2004); *O'Brien v. Town of Agawam,* 350 F.3d 279, 291 n. 22 (1st Cir.2003); *Vela v. City of Houston,* 276 F.3d 659, 667 (5th Cir.2001); *Ball v. District of Columbia,* 795 F.Supp. 461, 465 (D.D.C.1992).

The courts to have considered the status of insurance claims adjusters have analyzed their duties under the regulations promulgated by the Department of Labor and have ruled that *certain types of insurance claims adjusters* are exempt under the administrative exemption to the FLSA and therefore are not entitled to overtime pay. *See In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation,* 300 F.Supp.2d 1020, 1028 (D.Or.2003) ("*In re Farmers*") (certain types of claims representatives exempt under the FLSA); *Palacio v. Progressive Insurance Co.,* 244 F.Supp.2d 1040, 1045 (C.D.Cal.2002) (agent exempt where she "assessed liability, weighed evidence, determined credibility, reviewed insurance policies, negotiated with attorneys and claimants, and made recommendations to management based on skills, knowledge and training acquired over the course of several years."); *Jastremski v. Safeco Insurance Companies,* 243 F.Supp.2d 743,

745 (N.D.Ohio 2003) (adjuster exempt where he was assigned an insurance claim, contacted the claimant, reviewed the policy to determine if the claimed loss was covered, determined the dollar value of the claim and negotiated a settlement); *Munizza v. State Farm Mutual Automobile Insurance Co.,* No. C94–5345RJB, 1995 U.S. Dist. LEXIS 22362 (W.D.Wash.1995) (claims specialist is exempt employee).

The August 2004 Regulations include "insurance claims adjuster" as an example of an employee who could meet the requirements for an administrative exemption from the overtime pay requirements. The new regulation states:

Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liabilities and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

August 2004 Regs. at 22,263. The new regulations note that this subsection, like the case law, does not rely on the job title of "claims adjuster." *See id.* at 22,144. "Rather, there must be a case-by-case assessment to determine whether the employee's duties meet the requirement for exemption." *Id.* The subsection "identifies the typical duties of an exempt claims adjuster," *id.,* rather than mandating that every claims adjuster is, by definition, exempt. The Department of Labor cites the decisions in *Jastremski v. Safeco Insurance Co.* and *Palacio v. Progressive Insurance Co.* as examples of cases in which the courts have applied these factors to ana-

lyze and determine whether a given claims adjuster is exempt from the overtime pay requirement. *See* August 2004 Regs. at 22,144-45.

The GEICO auto damage adjusters inspect property damage, prepare damage estimates, and negotiate settlements within certain limits. Although the parties dispute the amount of time spent negotiating settlements, they agree that the majority of adjusters' time is spent inspecting vehicles, writing estimates, and traveling to and from inspection sites. *See* Con. Stmt. Facts at 142.[5] The auto damage adjusters do not interview witnesses and physicians, they do not make recommendations regarding coverage of claims, they do not determine liability and they do not make recommendations regarding litigation. They therefore do not perform the majority of the duties included in the description of "insurance claims adjuster" found in the August 2004 Regulations and cannot be automatically classified as exempt employees.

The first question under the Department of Labor Regulations test for determining the applicability of the administrative exemption is whether GEICO auto damage adjusters are paid on a salary basis and earn in excess of $250 per week. There is no dispute between the parties that plaintiffs' salary clearly satisfies this requirement for exemption.

The Court next must determine whether GEICO auto damage adjusters' primary duties are "directly related to management policies or general business operations of his employer or his employer's customers." 29 C.F.R. § 541.2(a), (e). According to the regulations, in order for an employee to qualify for the administrative exemption, his primary duty must be "of substantial importance to the management or operation of the business." 29 C.F.R. § 541.205(a). This includes "those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work." 29 C.F.R. § 541.205(a).[6] Para-

---

**5.** Defendant maintains that negotiations with body shops take place while estimates are being written and that total loss conversations are conducted by phone while driving. *See id.* at 142. Defendant maintains that there is "a lot" of negotiation involved in partial loss claims. *See, e.g., id.* at 202.

**6.** Because of the vague "production" language contained in the current regulations, *see* 29 C.F.R. § 541.205(a), some courts have engaged in prolonged discussions of when services can be the "product" of a corporation. *See, e.g., Jastremski v. Safeco Insurance Companies*, 243 F.Supp.2d at 753; *Palacio v. Progressive Insurance Co.*, 244 F.Supp.2d at 1046-47. This so-called "administration/production dichotomy" is used to try to force the operations of "modern-day post-industrial service-oriented businesses into an analytical framework formulated in the industrial climate of the late 1940s." *In re Farmers*, 300 F.Supp.2d at 1032. In *In re Farmers*, however, Judge Jones expressly declined to go through the analysis of the administra-

tion/production dichotomy in the claims adjuster context because the claims representatives "are service providers, not production workers." *In re Farmers*, 300 F.Supp.2d at 1033. Judge Jones also noted that "the difficulty of applying the administration/production dichotomy in the 21st Century garnered extensive commentary in the DOL's proposal to update and revise the FLSA exemption for, among other things, administrative employees." *See id.* at 1033 n. 11.

It is clear from the revised language of the August 2004 Regulations that the Department of Labor has moved away from this "administrative/production dichotomy" in the context of the service industries. *See* August 2004 Regs at 22,262-63 ("[A]n employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."). Like Judge Jones in *In re Farmers*, this Court declines to analyze the current

phrasing and referencing 29 C.F.R. § 541.205(a), most courts have agreed that insurance adjusters, including auto physical damage adjusters, do work that is "of substantial importance to [the employer's] business operations and management policies." *In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation*, 300 F.Supp.2d at 1048; *see also Palacio v. Progressive Insurance Co.*, 244 F.Supp.2d at 1048 (agent's primary duties were directly related to management policies or general business operations); *Jastremski v. Safeco Insurance Companies*, 243 F.Supp.2d at 751 (plaintiff's duties were administrative where he advised management of his findings, planned how to handle claims and negotiated binding settlements). Other courts have held that auto damage *appraisers* perform the "day-to-day activities of the business" and therefore do not "administer the business" of the defendant. *Reich v. American International Adjustment Co.*, 902 F.Supp. at 325. In *Reich*, however, the defendant was "in the business of resolving damage claims." *See id.* at 325. GEICO is in the business of selling auto insurance.

This Court concludes that the work done by auto damage adjusters is of substantial importance to GEICO's business operations and therefore satisfies the second requirement for exemption under the FLSA. The regulations clarify that "servicing" a business may include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(a). This activity is not limited to those who

formulate policies, but extends to those "whose responsibility it is to execute or carry ... out [the policies]." *Id.* at § 541.205(c). The auto damage adjusters are not sales staff. They are engaged in servicing the insurance policies of GEICO customers and in carrying out the policies formulated by GEICO with respect to auto damage claims. The Court concludes that the duties of auto damage adjusters are directly related to GEICO's management policies and business operations "in that [they] are responsible to execute or carry out [GEICO's] claims adjusting policies on behalf of [GEICO] and the policy holders." *In re Farmers*, 300 F.Supp.2d at 1048. Defendant has also demonstrated that the work done by the auto damage adjusters is of "substantial importance" to GEICO in that auto damage claims amount to 60 percent of GEICO's loss payments. *See* Con. Stmt. Facts at 14. Defendant thus has satisfied its burden of demonstrating that plaintiff's salary qualifies him for exemption and that plaintiff's primary duty is of substantial importance to GEICO's business operations, fulfilling the first two requirements of the administrative exemption.

The final question under the regulations promulgated by the Department of Labor is whether the primary duty of GEICO auto damage adjusters includes the exercise of discretion and independent judgment. *See* 29 C.F.R. § 541.3(e). A number of courts have found that claims agents and adjusters may exercise sufficient discretion and independent judgment to satisfy the administrative exemption. *See Jastremski v. Safeco Insurance Com-*

---

situation under an outmoded line of reasoning. Attempting to force the current situation into a production analogy makes no sense. Furthermore, even if this dichotomy could be applied, as plaintiff urges, GEICO is in the business of producing insurance policies, not

damage estimates. GEICO underwrites and sells automobile insurance directly to consumers and GEICO receives claims on less than ten percent of its policies. *See* Con. Stmt. Facts at 1, 4. Estimates therefore are not the "product" of GEICO.

*panies,* 243 F.Supp.2d at 757 (plaintiff exercised discretion in deciding how to conduct the claim investigation, including gathering facts, interviewing witnesses, using field representatives, and compiling scene diagrams); *Palacio v. Progressive Insurance Co.,* 244 F.Supp.2d 1040, 1048 (agent spent over half her time negotiating with claimants and attorneys and therefore exercised discretion and independent judgment); *Munizza v. State Farm Mutual Automobile Insurance Co.,* No. C94–5345RJB, 1995 U.S. Dist. LEXIS 22362 (W.D.Wash.1995) (claims specialist employed discretion and independent judgment).

Defendant relies most heavily, however, on the District of Maryland's decision in *Usery v. Government Employees Insurance Co.,* No. M–76–111 (D.Md. Feb. 9, 1978) to establish that a court has already ruled that GEICO's auto damage adjusters exercise sufficient discretion and independent judgment to be found exempt. *See* Def. Mot. at 24. The *Usery* court explained:

> Suffice it to say that looking at the evidence as a whole, it appears to the Court that there is discretion and the exercise of independent judgment by the adjuster in, at least, the following areas: Whether or not parts are to be replaced or repaired. To some extent, this function involves, as the Plaintiff suggests, an application of skill; however, the Court believes that it also involves an application of judgment together with skill in reaching the decision. The adjuster, having arrived at his judgment on a costs to repair or a total loss, must then negotiate with the claimant or the insured, as the case may be, with a representative of the insured or a body shop. That involves the application of judgment as well in deciding not only the best way to approach the individual who is on the other side, but also in-

volves, based on the evidence, compromise, a decision as to when to compromise and when to hold firm; and, in this Court's judgment, involves more than a simple mechanical application of figures obtained from a manual.

*Usery v. Government Employees Insurance Co.,* No. M–76–111 at 5.

Almost thirty years have passed since the *Usery* decision, and GEICO has introduced claim adjustment software in the intervening years. Although this Court agrees that "[t]he computer does not, and cannot, exercise discretion and independent judgment for the adjuster," *see* Def. Mot. at 29, it cannot be denied that the auto damage adjusters' duties today involve applying "well-established techniques, procedures or specific standards described in manuals or other sources" and that the computer program aids in compliance with those standards. August 2004 Regs. at 22,263. Regardless of the court's decision in *Usery,* this Court is not convinced that a GEICO auto damage adjuster's current duties demonstrate the exercise of discretion and independent judgment.

In recent cases dealing specifically with auto damage adjusters, several courts have agreed with this conclusion and found that, because of the nature of their work, auto damage adjusters do not exercise sufficient discretion and independent judgment to be classified as exempt employees. Judge Jones in *In re Farmers* explained that:

> Certainly [auto physical damage ("APD") claims representatives ("CR")] use some discretion in adjusting physical damage claims, but the evidence established that an APD CR's primary duties require the use of skill in applying techniques, procedures and specific standards, not the use of discretion and independent judgment in matters of

consequence. Significantly, in most cases, a vehicle's VIN number tells the CR almost everything there is to know about the vehicle involved. Vehicle damage is finite and limited to the value of a known entity from standard sources. Certainly, an APD CR must make choices among options in adjusting a claim, but with the advent of [the computer Customer Restoration Network] and the use of CCC [software], the choices are limited and do not involve matters of consequence.

*In re Farmers*, 300 F.Supp.2d at 1048 (quotations and citations omitted). Judge Jones found that although the claims representatives did have to make choices among options in adjusting a claim, the VIN number was automatically entered into the system and the choices offered by the software used by the claims representatives were "limited" and did not involve "matters of significance." *Id.* at 1043, 1048.[7] The court in *Reich* agreed. In ruling that auto damage appraisers were not exempt, it noted that "the use of skill is to be clearly distinguished from work requiring discretion and independent judgment." *Reich v. American International Adjustment Co.*, 902 F.Supp. at 324. This Court concludes that the process of estimating damage claims—although requiring the use of knowledge and skill on the part of the auto damage adjusters—does not involve the exercise of discretion and independent judgment.

The question of negotiating with customers and body shops presents a slightly more difficult problem. It is clear from the consolidated statement of material facts that the parties disagree as to the amount of time auto damage adjusters spend negotiating. Plaintiff maintains that the percentage of time is near zero, while defendant maintains, somewhat vaguely, that "a lot" of time is spent negotiating with repair shops on partial losses and that there is negotiation on some total losses with the customers. The parties agree, however, that the majority of total loss claims involve no negotiation. In both *In re Farmers* and *Reich,* the courts acknowledged that the claims adjusters were responsible for a certain amount of negotiating, but that fact did not undermine their conclusions that the auto damage adjusters and appraisers in question did not exercise discretion and independent judgment such as would render them exempt employees. *See In re Farmers,* 300 F.Supp.2d at 1043 (auto claims adjusters negotiated on both partial and total losses); *Reich v. American International Adjustment Co.,* 902 F.Supp. at 324 (appraisers spent 10 to 20 percent of their time negotiating with repair shops). The court in *Reich* explained that "[a]ny discretion the appraisers exercise during negotiations fails to rise to the level required for [the exemption]" because "they are guided primarily by their skill and experience and by written manuals of established labor and material costs." *Reich v. American International Adjustment Co.,* 902 F.Supp. at 324.[8] Regardless

---

7. Although Judge Jones determined that auto physical damage claims representatives were not exempt employees under the Fair Labor Standards Act and therefore were not exempt from the overtime pay requirements, he specifically found that certain other types of claims representatives were properly classified as exempt. *See In re Farmers,* 300 F.Supp.2d at 1027. Although not controlling precedent in this Court, the facts surrounding the *In re Farmers* decision concerning the

Farmers auto physical damage adjusters are nearly identical to those at issue here, and the Court finds the reasoning of Judge Jones to be persuasive.

8. The Court notes that the appraisers in *Reich* only determined the cost of repair and negotiated with body repair shops for an agreed upon price for the work. *See Reich v. American International Adjustment Co.,* 902 F.Supp.

of the exact percentage of time GEICO auto damage adjusters spend conducting active negotiations, those negotiations are so structured by the estimating process and the GEICO guidelines that the auto damage adjusters' negotiation duties cannot satisfy the requirement of discretion and independent judgment.

The Court is not persuaded by *Usery* and finds the reasoning of these more recent decisions persuasive. Although some discretion is certainly exercised by the adjusters, the Court is satisfied that the vast majority of the adjusters' work consists of using their training and skills to assess the value of the damage to the vehicle in accordance with the standards laid out by GEICO. The adjusters do some negotiating with claimants and insureds, but that negotiating is limited in scope by both the information and standards contained in the computer software and the guidelines and limits on negotiating authority laid out by GEICO. The Court is satisfied that the primary duties of the auto damage adjusters "require the use of skill in applying techniques, procedures and specific standards, not the use of discretion and independent judgment in matters of consequence." *In re Farmers*, 300 F.Supp.2d at 1048. The Court therefore must conclude that GEICO auto damage adjusters do not exercise sufficient discretion and independent judgment to qualify for the administrative exemption and are thus entitled to overtime pay.

Under the three part test established by the Department of Labor Regulations and applied by the courts, defendant has satisfied the first two requirements by showing that plaintiff's salary is sufficiently high to qualify for the administrative exemption and that plaintiff's primary duty is of substantial importance to GEICO's business operations. Defendant has failed, however, to meet the third requirement by demonstrating that plaintiff's primary duty includes the exercise of discretion and independent judgment. Because the Court concludes that GEICO auto damage adjusters are not covered by the administrative exemption of the FLSA, partial summary judgment on the issue of liability must be granted to plaintiffs.

A Judgment and Order consistent with this Opinion shall issue this same day.

SO ORDERED.

### ORDER

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that plaintiff's motion for partial summary judgment on the issue of liability [91] is GRANTED; it is

FURTHER ORDERED that defendant's motion for summary judgment [90] is DENIED; it is

FURTHER ORDERED that judgment is entered for plaintiff with respect to the sole issue of liability; and it is

FURTHER ORDERED that the parties shall submit, on or before July 30, 2004, a joint report detailing their proposed discovery schedule on the issue of damages.

SO ORDERED.

at 322. They did not negotiate with customers as the GEICO adjusters do.