**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: FARMERS INSURANCE
EXCHANGE, Claims
Representatives' Overtime Pay
Litigation,

DAVE MILLER, on behalf of himself
and the class members in MDL
Case No. 1439,
      *Plaintiffs-Appellants,*

v.

FARMERS INSURANCE EXCHANGE,
      *Defendant-Appellee,*

and

FARMERS GROUP, INC.; PLAN
ADMINISTRATOR OF THE FARMERS
GROUP, INC. PROFIT SHARING
SAVINGS PLAN TRUST; PLAN
ADMINISTRATOR OF THE FARMERS
GROUP, INC. EMPLOYEES' PENSION
PLAN,
      *Defendants.*

Nos. 05-35080
    05-35145

D.C. No.
CV-02-01439-JO

3625

In re: Farmers Insurance
Exchange, Claims
Representatives' Overtime Pay
Litigation,

Dave Miller, on behalf of himself
and the class members in MDL
Case No. 1439,
*Plaintiffs-Appellees,*

v.

Farmers Insurance Exchange,
*Defendant-Appellant,*

and

Farmers Group, Inc.; Plan
Administrator of the Farmers
Group, Inc. Profit Sharing
Savings Plan Trust; Plan
Administrator of the Farmers
Group, Inc. Employees' Pension
Plan,
*Defendants.*

Nos. 05-35082
05-35146

D.C. No.
CV-02-01439-JO

In re: FARMERS INSURANCE
EXCHANGE, Claims
Representatives' Overtime Pay
Litigation,

JESSE CORRALEZ, on behalf of
himself and the class members in
MDL Case No. 1439,
                    *Plaintiffs-Appellants,*

                v.

FARMERS INSURANCE EXCHANGE,
                    *Defendant-Appellee,*

                and

FARMERS GROUP, INC.; PLAN
ADMINISTRATOR OF THE FARMERS
GROUP, INC. PROFIT SHARING
SAVINGS PLAN TRUST; PLAN
ADMINISTRATOR OF THE FARMERS
GROUP, INC. EMPLOYEES' PENSION
PLAN,
                    *Defendants.*

No. 05-35509

D.C. No.
CV-02-01439-JO

In re: Farmers Insurance
Exchange, Claims
Representatives' Overtime Pay
Litigation,

————————————————

Jesse Corralez, on behalf of
himself and the class members in
MDL Case No. 1439,
                *Plaintiffs-Appellees,*

            v.

Farmers Insurance Exchange,
                *Defendant-Appellant,*

            and

Farmers Group, Inc.; Plan
Administrator of the Farmers
Group, Inc. Profit Sharing
Savings Plan Trust; Plan
Administrator of the Farmers
Group, Inc. Employees' Pension
Plan,
                *Defendants.*

No. 05-35501

D.C. No.
CV-02-01439-JO

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Argued and Submitted
September 14, 2006—Portland, Oregon

Filed October 26, 2006
Amended March 30, 2007

Before: Barry G. Silverman and Ronald M. Gould,
Circuit Judges, and John S. Rhoades, Sr.,* District Judge.

Opinion by Judge Silverman

---

*The Honorable John S. Rhoades, Sr., Senior United States District Judge for the Southern District of California, sitting by designation.

**COUNSEL**

Steven G. Zieff, Kenneth J. Sugarman, Rudy, Exelrod & Zieff, LLP, San Francisco, California; James M. Finberg, Eve H. Cervantez, Lieff Cabraser Heimann & Bernstein, LLP, San Francisco, California; and Michael Rubin, Peder J. V. Thoreen, Altshuler, Berzon, Nussbaum, Rubin & Demain, San

Francisco, California, for plaintiffs Jesse Corralez, et al., and David Miller, et al.

Theodore J. Boutrous, Jr., Deborah J. Clarke, Elisabeth C. Watson, Gibson, Dunn & Crutcher LLP, Los Angeles, California, and Barnes H. Ellis, James N. Westwood, Stoel Rives LLP, Portland, Oregon, for defendants Farmers Insurance Exchange, et al.

## ORDER

The Opinion filed October 26, 2006, slip op. 17921, and appearing at 466 F.3d 853 (9th Cir. 2006), is amended as follows:

1. At slip op. 17934, footnote 4, second paragraph, lines 7 & 9, insert "under the FLSA" after "the claims adjusters in this case are exempt" and "under the statute" after "liquidated damages."

2. At slip op. 17939, replace citation at the end of the paragraph labeled headnote [6] with "*Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006) (per curiam)."

3. At slip op. 17941, line 3, delete "(Emphasis added.)" at end of sentence and replace with the following:

   (Quoting DOL Wage & Hour Div. Op. Ltr., at 3 (Nov. 19, 2002) ("If an adjuster erroneously recommends that coverage should be denied, even on a claim of relatively low value, the insurance company may be liable for significant extra contractual damages for bad faith denial of the claim.").)

4.  At slip op. 17941, after the first sentence of the first full paragraph labeled headnote [8], insert the following citation:

    *See Cheatham*, 465 F.3d at 585 (rejecting argument that adjusters "are limited in their ability to negotiate by having to adhere to computer software"; that they must consult with manuals or guidelines "does not preclude their exercise of discretion and independent judgment").

5.  At slip op. 17941-42, delete last two sentences of full paragraph labeled as headnote [8] and replace with:

    For those reasons, we disagree with the district court's legal conclusion, quoting the language of the regulations, that an automobile damage adjuster's primary duties "require the use of skill in applying techniques, procedures and specific standards, not the use of discretion and independent judgment." (Quoting 29 C.F.R. § 541.207(b) (2004).)

6.  At slip op. 17942, delete first full paragraph that begins "Plaintiffs argue that" and insert the following two new paragraphs:

    Plaintiffs argue that § 541.203 provides "illustrative examples" of how *some* adjusters may meet the duties test, and that we have applied the regulation to "an overly-simplified version of the facts of this case." They instead characterize the district court's findings as establishing that they satisfy *neither* prong of the duties test — first, plaintiffs argue, because they deliver FIE's "product"

(i.e., insurance coverage) to its customers, they are merely engaged in the "day-to-day carrying out of the business' affairs, rather than running the business itself," *Bratt*, 912 F.2d at 1070 (concluding that court probation officers do not engage in activities "primarily related to management policies or general business operations" and are therefore non-exempt), and second, they argue that decisions delegated to them are limited to the "routine and unimportant." The district court's findings support no such conclusion.

An employee "whose responsibility it is to execute or carry . . . out" policy may satisfy the "directly related" prong if his work is otherwise of "substantial importance" to the management or operation of the business. 29 C.F.R. § 541.205(c) (2004). The regulations also require that the employee's exercise of discretion and independent judgment be "real and substantial," § 541.207(d)(1) (2004), or as plaintiffs phrase it, "comprise[ ] a substantial element of [his primary] duties." That is, the employee must exercise discretion and independent judgment in "matters of significance." § 541.200 (a)(3).

7.   Slip op. 17942, delete first two sentences of paragraph that begins "In addition to finding" and replace with the following two sentences:

In addition to finding that FIE could be subject to state fines if reserves are set too low,

the district court found that an adjuster's coverage decisions — which, as we have pointed out, are typically made *without* supervisor involvement — "are important to FIE's reputation with the insurance-buying public," and that an adjuster "represent[s] FIE to policyholders, claimants, and others involved in the claim's resolution (e.g., witnesses, vendors, body shops, outside experts, police, fire personnel, attorneys, claims representatives from other companies, judges, arbitrators)." *See* § 541.205(b) (2004) ("The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, . . . negotiating [and] representing the company.").

8. Slip op. 17942, paragraph that begins "In addition to finding," delete last sentence that begins "In *Cheatham*, the Fifth Circuit concluded" and replace with the following:

In *Cheatham*, the Fifth Circuit concluded that the duties of the adjusters were directly related to Allstate's management policies or general business operations because they "advised the management, represented Allstate, and negotiated on Allstate's behalf," all of which "required [their] exercise of discretion and independent judgment." *Cheatham*, 465 F.3d at 585.

9. Slip op. 17943, first full paragraph, lines 4-5: delete "according to the district court" and insert the following citation at the end of that sentence:

"DOL Wage & Hour Div. Op. Ltr., at 3 (Nov. 19, 2002)."

10. Slip op. 17943, first full paragraph, delete last sentence and its accompanying citation and replace with the following:

What matters is that, because they represent FIE to the public through their handling of claims and directly impact FIE's customer base, the adjusters' work "affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." § 541.202(b).

11. Slip op. 17944, lines 6-7, insert "under the FLSA" after "multi-line adjusters are exempt."

12. Slip op. 17944-45, paragraph labeled headnote [11], delete "Nor is there any indication that the DOL intended to carve out exceptions for certain types of adjusters because, in its view, they exercise less discretion and independent judgment compared to other types of adjusters."

13. Slip op. 17945, delete second sentence of paragraph labeled as headnote [11] and replace with:

Moreover, § 541.203 says that adjusters are exempt if they, like the adjusters in this case, determine coverage and liability, prepare estimates and negotiate settlements.

14. Slip op. 17947, paragraph labeled headnote [14], delete the following:

Plaintiffs do not even mention the over-time laws in Illinois, New Mexico or Washington, so the issue of whether claims adjusters from those states could still recover under state law is waived. *See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1203 n.6 (9th Cir. 2005) (panel will not consider issue raised before district court but not raised on appeal).

15. Slip op. 17947, paragraph labeled headnote [14], lines 6-9, delete "As to Colorado, Minnesota and Oregon law" so that sentence begins with "Plaintiffs assert" and insert "under state law" after "for the administrative exemption."

16. Slip op. 17947, paragraph labeled headnote [14], lines 11-12, replace "in those three states" with "in Colorado, Minnesota and Oregon."

17. Slip op. 17948, paragraph labeled headnote [15], last line, insert "as well as Illinois, New Mexico and Washington law" after "Colorado, Minnesota and Oregon law."

18. Slip op. 17948, **CONCLUSION**, first paragraph, replace "as well as their claims under Michigan, Illinois, New Mexico and Washington law" with "as well as their claims under Michigan law."

19. Slip op. 17948, **CONCLUSION**, second paragraph, replace "under Colorado, Minnesota and Oregon law" with "under Colorado, Illinois,

Minnesota, New Mexico, Oregon and Washington law."

20. Slip op. 17949, change "their own costs" to "its own costs" in the sentence setting forth the judgment of the Court.

With these amendments, the panel has voted to deny the petition for panel rehearing and the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. *See* Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are **DENIED**. No further petitions shall be entertained.

---

## OPINION

SILVERMAN, Circuit Judge:

For more than 50 years, the Department of Labor has considered claims adjusters exempt from the Fair Labor Standard Act's overtime requirement. In 2004, the DOL promulgated 29 C.F.R. § 541.203, which it viewed as "consistent with" existing law. Section 541.203 exempts claims adjusters if they perform activities such as interviewing witnesses, making recommendations regarding coverage and value of claims, determining fault and negotiating settlements.

In this case, the plaintiffs are nearly 2,000 former and current claims adjusters who handle, respectively, automobile damage claims, non-automobile property damage claims, personal injury claims and various combinations of these. They

assert that their employer improperly classified them as exempt from the FLSA. The district court ruled that some of them are exempt, and some of them are not. In doing so, the district court promulgated a "$3,000 in claims paid per month" rule, a rule that all parties to this appeal agree is neither workable nor supported by the evidence.

We hold today that all of the adjusters in this case are exempt. The district court's factual findings establish that, regardless of the type (personal injury v. property) or size (large v. small) of the claims they handle, the adjusters are required to do virtually all of the very things that § 541.203 contemplates: use discretion to determine whether the loss is covered, set reserves, decide who is to blame for the loss and negotiate with the insured or his lawyer. If the DOL should choose to distinguish between adjusters based on the type or value of the claims they handle, it is free to amend the regulations and tell employers how to do that. Unless and until that happens, we are obligated to follow § 541.203. We affirm in part and reverse in part.

## BACKGROUND

### A. Farmers' business and the role of adjusters

Farmers Insurance Exchange ("FIE") is a reciprocal or inter-insurance exchange providing insurance throughout the country.[1] As a reciprocal exchange company, FIE is owned by its policyholders, or "subscribers," who exchange contracts with one another and, by pooling their resources, insure one another against certain losses. FIE, whether on its own or

---

[1]Our summary of the facts is taken from the district court's findings of fact, which are set forth in its published decision. *See* 336 F. Supp. 2d 1077 (D. Ore. 2004). Neither party has shown that any of those findings were clearly erroneous. *See Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (district court's factual findings in FLSA case are reviewed for clear error).

through its related companies, performs all the functions of a typical insurance company, including selling policies, contracting with individual agents who sell and service policies, procuring reinsurance and adjusting claims made on its policies.[2]

Around 50 percent of FIE's 10,000 employees are claims adjusters. Most claims adjusters work out of their homes, and FIE provides them with company cars, phone lines, computer support, printers and fax machines. Claims adjusters spend significant time on the road, driving to locations where a loss or accident occurred. Branch managers in FIE's 120 to 160 branch offices nationwide supervise the claims adjusters. Claims adjusters do not supervise other employees.

FIE employs five types of claims adjusters in its personal lines business: those who handle automobile property damage claims ("automobile damage adjusters"), those who handle homeowners' claims for property and contents damage ("property adjusters"), those who handle personal injury claims ("liability adjusters"), those who handle unique physical damage claims (*e.g.*, RVs, mobile homes) and personal injury claims ("Foremost adjusters") and another sort of hybrid claims adjuster who handles two or more types of claims ("multi-line adjusters").

FIE puts significant emphasis on paying exactly what it owes under the policy, "nothing more, nothing less." To that end, FIE provides each adjuster with written guidelines and training materials to aid them in the claims handling process. Some procedures are mandatory, while others are merely rec-

---

[2]For example, subscribers of FIE appoint Farmers Group, Inc., as their exclusive "attorney in fact." Farmers Group then acts as FIE's agent in performing or securing certain services and facilities that FIE uses in its operations, including accounting, marketing, developing and pricing of insurance products, financial and regulatory auditing, underwriting and actuarial functions.

ommendations. Adjusters are subject to quality assurance audits at any time, but most are performed after the claim is closed. The primary goal of the audits is to determine "lost economic opportunity," a subjective assessment of the difference between what was paid and what could have been paid if the adjuster had correctly handled the claim. The audits ensure that adjusters are following FIE's "best practices," which are any actions that can be implemented to prevent lost economic opportunity. FIE's goal is to limit overpayment to two percent for automobile damage and liability claims, and slightly more than two percent for other property losses.

Claims adjusters use computer software to help them estimate the damage or loss; indeed, FIE expects its adjusters to use estimating software "whenever possible or appropriate." Estimating software "acts as a price database," much like parts catalogs, vendor quotes, and jury verdicts, and its usefulness largely is dependent, in many cases, on the quality of the information the adjuster develops before turning to the estimating software.

FIE's claims adjusters are classified at one of three levels, depending on experience and performance: claims adjuster, senior claims adjuster and special claims adjuster. Within any particular line of insurance, the duties of all three are mostly the same. One difference, however, is their settlement authority. The branch manager has discretion to set each adjuster's settlement authority, and generally, less experienced adjusters have lower authority levels. On any given claim, an adjuster's settlement authority can be raised with supervisor approval. On average, each adjuster pays approximately $1 million in claims per year, ranging from $2,800 to $8,000 per claim.

During all times relevant to this appeal, FIE paid its claims adjusters on a salary basis, not an hourly basis.[3] Many adjust-

---

[3]An adjuster's salary increases with seniority. For instance, between 1998 and 2002, the average salary of an adjuster ranged from $36,000 to $43,000, with new adjusters earning in the mid-20s and veteran adjusters earning in the mid-60s.

ers worked more than 40 hours per week during the class period, but FIE did not pay them overtime.

## B.    The lawsuits

In late 2001 and early 2002, a group of current and former claims adjusters filed a series of FLSA actions against FIE on behalf of themselves and similarly-situated adjusters, seeking overtime pay for the weeks in which they worked more than 40 hours. In March 2002, the Panel on Multidistrict Litigation transferred the various actions to the district court below for consolidated pretrial proceedings. The district court certified a FLSA collective action, which, under the Act, required any unnamed former or current claims adjusters to formally "opt-in" if they wanted to participate. *See* 29 U.S.C. § 216(b). Of the 6,100 notices sent to current and former claims adjusters, approximately 1,170 opted in.

The parties later stipulated to certification of seven state law classes, comprised of individuals from Colorado, Illinois, Michigan, Minnesota, New Mexico, Oregon and Washington. In addressing whether "common questions predominate," as required by Fed. R. Civ. P. 23(b)(3), the district court concluded that "the administrative exemption test under the laws of the seven states at issue . . . is substantially similar to (if not identical to in some instances) the federal test."

Each of the state law classes was an "opt-out" class, that is, individuals were automatically included in the state law action unless they filed the appropriate notice with the district court. Some adjusters sought relief under state law only; they did not opt-in to the FLSA collective action, nor did they opt-out of their respective state law class.

On the parties' stipulation, the district court retained jurisdiction after class certification. The parties waived their right to a jury trial, and agreed to bifurcate the bench trial into a liability phase and, if necessary, a damages phase. The sole issue

at the liability phase was whether FIE properly classified its adjusters as exempt from federal and state overtime laws, and if not, whether FIE could assert any defenses to liability or damages.

The district court conducted a three-week bench trial, and then issued its Findings of Fact and Conclusions of Law. In its order, the district court concluded that: (i) automobile damage adjusters are non-exempt; (ii) property adjusters are non-exempt if more than 50 percent of their pay-outs in any one month are less than $3,000; (iii) Foremost adjusters are non-exempt if they spend more than 38-3/4 hours per week handling residential property claims on which the pay-out averages, on a monthly basis, less than $3,000; (iv) multi-line adjusters are non-exempt if they spend more than 38-3/4 hours per week handling automobile damage claims in any amount and/or residential property claims on which the pay-out averages, on a monthly basis, less than $3,000; (v) all other adjusters, including liability adjusters, are exempt and (vi) Michigan's overtime law applied to FIE.[4] The district court awarded nearly $52.5 million to the 1,039 former and current adjusters who filed the necessary claims paperwork. These appeals followed.

---

[4]Later, the district court wrote a letter to the parties in which it acknowledged that the $3,000 rule "does permit debate over the appropriate interpretation." The letter went on to say that "in determining the dollar amount of a claim, I intend the dollar amount to be the amount paid, not the amount originally requested."

The district court also concluded that FIE's violations of the FLSA were "willful" after September 12, 2001, entitling plaintiffs to a three-year (instead of a two-year) statute of limitations as to those violations. The district court went on to conclude that FIE failed to prove it acted in good faith after September 12, 2001, precluding any defense to FLSA liability and permitting liquidated damages for violations after that date. Because we conclude that all of the claims adjusters in this case are exempt under the FLSA, we do not reach the issues of willfulness or FIE's good faith defenses to liability and liquidated damages under the statute.

ANALYSIS

## I.  FLSA Claim

**[1]** Under the FLSA, certain employers must pay their employees time and a half for work in excess of 40 hours per week:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Some employees, however, are not covered by the Act. At issue in this case is the exemption for persons "employed in a bona fide . . . administrative . . . capacity." 29 U.S.C. § 213(a)(1).

**[2]** The FLSA delegates to the Secretary of Labor broad authority to "define[ ] and delimit[ ]" the scope of the administrative exemption. *Id*. In accordance with that authority, the Secretary has formulated a test, known as the "short duties test," to determine whether employees who earn at least $250 per week[5] — as the claims adjusters in this case do — qualify for the administrative exemption. Specifically, the employee's "primary duty" must (i) consist of "[t]he performance of office or nonmanual work directly related to management policies or general business operations of his employer," and (ii) include the exercise of "discretion and independent judg-

---

[5]That amount was increased to $455 per week in 2004. *See* 29 C.F.R. § 541.200(a)(1). Unless otherwise indicated, cites to the DOL's regulations are to the current version of Title 29 of the C.F.R.

ment." 29 C.F.R. § 541.2 (2004). As to whether the duties test is satisfied, we must independently review the record, without deference to the district court's conclusions. *See Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002) (whether an employee's activities exclude him from the over-time benefits of the FLSA is a question of law, and the district court's decision is reviewed de novo).

There is no dispute that the claims adjusters in this case performed "office or nonmanual work." The dispute centers around the remaining requirements of the duties test.

## A.   The DOL regulation

[3] 29 C.F.R. § 541.203 provides that:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a). The district court did not rely on this regulation, presumably because it was not in effect at the time the plaintiffs filed these actions. Nevertheless, § 541.203 bears directly on our analysis. *See Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990) (FLSA case; "[w]e must give due deference to the interpretation of statutes and regulations by the agency charged with their administration." (internal quotations and ellipsis omitted)).

[4] For starters, § 541.203 does not represent a change in the law. When the DOL promulgated § 541.203, it said that

the new regulation "is consistent with existing section 541.205(c)(5)." 69 Fed. Reg. 22122, 22144 (April 23, 2004). The former 29 C.F.R. § 541.205(c)(5) provided that the test of "directly related to management policies or general business operations" is met by, among other persons, "claim agents and adjusters." The parties agree that § 541.205(c)(5)'s reference to "claim adjusters" originated in a 1940 DOL Report that created the administrative exemption. Plaintiffs argue, however, that the 1940 Report was not referring to insurance claims adjusters generally, but only a "claim agent" who, unlike the adjusters in this case, was a "higher-level employee" with independent authority to settle all types of sizeable damage claims. The record shows otherwise. In a 2002 Opinion Letter addressing insurance claims adjusters, the DOL specifically referenced that 1940 Report in concluding that "Wage and Hour has *long recognized* that claims adjusters typically perform work that is administrative in nature." DOL Wage & Hour Div. Op. Ltr., at 2 (Nov. 19, 2002) (emphasis added).

That same Opinion Letter concluded that, within their established authority, claims adjusters exercise the requisite discretion and independent judgment if they: (i) make all decisions regarding coverage and liability, (ii) negotiate with full authority to attempt to achieve a settlement, (iii) make recommendations to their supervisors on the appropriate value of "much larger" claims, which are "frequently accepted" and (iv) work with counsel to represent the company in any litigation that ensues. *Id.* at 4. Essential to the DOL's opinion was the fact that the adjusters "are not merely pursuing a standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party." *Id*. at 4-5.

Plaintiffs dispute the relevancy of the 2002 Opinion Letter, arguing that it represents an "about-face" on the issue of whether claims adjusters are exempt. But earlier guidance

from the DOL is consistent with the 2002 Opinion Letter. In 1985, for example, the DOL concluded that an insurer's "field service representative" is exempt to the extent he "investigates the claims, determines the extent of the damages, negotiates the settlements within the parameters of the established monetary limits, and makes recommendations with respect to larger case settlements." DOL Wage & Hour Div. Op. Ltr., at 2 (Oct. 29, 1985). In a 1963 Opinion Letter, the DOL distinguished *appraisers* from *adjusters*:

> Appraisers who merely inspect damaged vehicles to estimate the cost of labor and materials and to reach an agreed price for repairs with the repair shop have not been considered as the type of employees who customarily and regularly exercise discretion and independent judgment . . . . In making their estimates, they are guided primarily by their skill and experience and by written manuals of established labor and material costs . . . .

DOL Wage & Hour Div. Op. Ltr., at 1-2 (Feb. 18, 1963). In contrast, an adjuster "investigates the validity and the extent of liability of a claim and negotiates settlement . . . irrespective of whether the claim is one for property damage or for personal injury." *Id*. at 2. And in 1957, the DOL opined that if adjusters are given "reasonable latitude in carrying on negotiations with the insured, the results of which form the basis of their recommendations, they may be [exempt]." DOL Wage & Hour Div. Op. Ltr., at 2 (Oct. 24, 1957). If those adjusters had authority to *make* settlements, that would be "stronger evidence of their exercise of discretion and independent judgment." *Id*.

[5] We must give deference to the DOL's interpretation of its own regulations through, for example, Opinion Letters. *Webster v. Pub. Sch. Employees of Washington*, 247 F.3d 910, 914 n.2 (9th Cir. 2001) (citing *Auer v. Robbins*, 519 U.S. 452 (1997)). The DOL's position on claims adjusters — as articu-

lated in § 541.203 — has been consistent over the years, *see Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 n.9 (9th Cir. 2003) ("an agency interpretation . . . which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view" (internal quotations and alteration omitted)), and we are persuaded by its reasoning, *see Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("interpretations . . . such as opinion letters are entitled to respect . . . to the extent that those interpretations have the power to persuade" (internal quotations and citation omitted)); *see also Auer*, 519 U.S. at 461 (DOL's interpretation of its own regulations is controlling unless "plainly erroneous or inconsistent with the regulation" (internal quotations omitted)).

## B.   The district court's findings

The district court found that all claims adjusters in this case: (i) determine whether the policy covers the loss, (ii) recommend a reserve upon estimating FIE's exposure on the claim, in accordance with state law requirements, (iii) interview the insured and assess his (or others') credibility, (iv) advise FIE regarding any fraud indicators or the potential for subrogation and underwriting risk, (v) negotiate settlements, (vi) seek additional authority from their supervisors, which is granted "75-100 percent of the time,"[6] when the recommended settlement exceeds their established authority and (vii) communicate with opposing counsel and FIE's counsel.

[6] As far as we are concerned, that says it all. The district court's findings almost track word for word the language in § 541.203, and thus establish that FIE's claims adjusters are exempt from the FLSA. The lone exception appears to be that

---

[6] *See* DOL Wage & Hour Div. Op. Ltr., at 4 (Nov. 19, 2002) (adjusters are exempt where they make recommendations to their supervisors on the appropriate value of claims beyond their authority, which are "frequently accepted").

only liability adjusters make recommendations regarding litigation. The regulation, however, does not require the adjuster to perform each and every activity listed. *See* 69 Fed. Reg. at 22144 ("[541.203] identifies the *typical* duties of an exempt claims adjuster" (emphasis added)). And the Fifth Circuit has just held that claims adjusters for Allstate Insurance are exempt where they, like FIE's adjusters, "exercised discretion in determining coverage, conducting investigations, determining liability and assigning percentages of fault to parties, . . . negotiating a final settlement [and] setting and adjusting reserves based upon a preliminary evaluation of the case." *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006) (per curiam).

**[7]** Unlike the district court, we make no exceptions for those adjusters who handle "smaller" claims. Even for claims on the lower end of his established settlement authority, the adjuster must *first* determine whether the claim is covered. Once he determines that the loss is covered, the adjuster can settle it without supervisor approval. And while supervisor approval is necessary before FIE denies a claim, in such cases the adjuster often prepares a draft denial letter with the recommendation to deny coverage. Discretion and independent judgment do not necessarily imply that the decisions made by the employee have a "finality that goes with unlimited authority and a complete absence of review." § 541.202(c).

Moreover, an adjuster must estimate FIE's exposure on a claim *before* his investigation into the loss — and thus his initial settlement offer — is completed. Generally, reserves are set without supervisor approval; while automobile damage adjusters do not set the reserves, they do recommend an amount. *See id.* Adjusters also conduct their own investigations, and often decide whether to obtain the assistance of experts in determining the cause of the loss. Given the authority that FIE's adjusters have, this case is distinguishable from a recent DOL Opinion Letter, cited by plaintiffs, in which the adjuster had to "frequently seek approval" before settling a

claim, could not conduct additional investigation without supervisor approval and was "so closely supervised" that he "d[id] not have the authority to make independent choices." DOL Wage & Hour Div. Op. Ltr., at 2, 6 (Aug. 26, 2005).

In separating out certain property adjusters, the district court went on to say that, in major losses (i.e., those resulting in settlements of over $3,000), erroneous coverage decisions can impact FIE's bottom line or result in bad faith claims. But the same is true of claims that cost FIE less than $3,000: the district court found that "an erroneous denial of coverage, even on claims of relatively low value, may expose FIE to legal action and extra-contractual damages in many jurisdictions." (Quoting DOL Wage & Hour Div. Op. Ltr., at 3 (Nov. 19, 2002) ("If an adjuster erroneously recommends that coverage should be denied, even on a claim of relatively low value, the insurance company may be liable for significant extra contractual damages for bad faith denial of the claim.").) Also, that coverage decisions can be more "complicated" because some residential losses are "major" is no basis to differentiate among FIE's property adjusters. Again, the adjuster must decide if the loss is covered, which, according to the district court, requires him to make credibility determinations, evaluate the insured's lifestyle and possibly use outside experts. That FIE ultimately denies the bulk of the coverage and pays only $500, based in no small part on the adjuster's recommendations, should not render his work — which otherwise qualifies for the exemption — non-exempt. In any event, we see no reason (nor did the district court provide one) why the insured's lifestyle could not be just as relevant for losses less than $3,000; indeed, even small claims require scrutiny: FIE's stated philosophy is "we pay what we owe, nothing more, nothing less."

[8] Finally, the use of computer software to estimate claims does not eliminate the need for discretion and judgment any more than does resort to other reference works or to the opinions of appraisers and other experts. *See Cheatham*, 465 F.3d

at 585 (rejecting argument that adjusters "are limited in their ability to negotiate by having to adhere to computer software"; that they must consult with manuals or guidelines "does not preclude their exercise of discretion and independent judgment"). For instance, with respect to antique or speciality automobiles, an automobile damage adjuster cannot use computer software; instead, he must generate an estimate manually. Also, while software exists for estimating the value of totaled vehicles, an automobile damage adjuster "must use good judgment" in deciding whether it is the "best tool" for a total loss, which accounts for 30 to 50 percent of his file. Total loss claims that reach or exceed policy limits are "often difficult to negotiate and settle, and require a very detailed evaluation." For those reasons, we disagree with the district court's legal conclusion, quoting the language of the regulations, that an automobile damage adjuster's primary duties "require the use of skill in applying techniques, procedures and specific standards, not the use of discretion and independent judgment." (Quoting 29 C.F.R. § 541.207(b) (2004).)

Plaintiffs argue that § 541.203 provides "illustrative examples" of how *some* adjusters may meet the duties test, and that we have applied the regulation to "an overly-simplified version of the facts of this case." They instead characterize the district court's findings as establishing that they satisfy *neither* prong of the duties test — first, plaintiffs argue, because they deliver FIE's "product" (i.e., insurance coverage) to its customers, they are merely engaged in the "day-to-day carrying out of the business' affairs rather than running the business itself," *Bratt*, 912 F.2d at 1070 (concluding that court probation officers do not engage in activities "primarily related to management policies or general business operations" and are therefore non-exempt), and second, they argue that decisions delegated to them are limited to the "routine and unimportant." The district court's findings support no such conclusion.

An employee "whose responsibility it is to execute or carry . . . out" policy may satisfy the "directly related" prong if his

work is otherwise of "substantial importance" to the management or operation of the business. 29 C.F.R. § 541.205(c) (2004). The regulations also require that the employee's exercise of discretion and independent judgment be "real and substantial," § 541.207(d)(1) (2004), or as plaintiffs phrase it, "comprise[ ] a substantial element of [his primary] duties." That is, the employee must exercise discretion and independent judgment in "matters of significance." § 541.200(a)(3).

In addition to finding that FIE could be subject to state fines if reserves are set too low, the district court found that an adjuster's coverage decisions — which, as we have pointed out, are typically made *without* supervisor involvement — "are important to FIE's reputation with the insurance-buying public," and that an adjuster "represent[s] FIE to policyholders, claimants, and others involved in the claim's resolution (e.g., witnesses, vendors, body shops, outside experts, police, fire personnel, attorneys, claims representatives from other companies, judges, arbitrators)." *See* § 541.205(b) (2004) ("The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, . . . negotiating [and] representing the company."). In *Cheatham*, the Fifth Circuit concluded that the duties of the adjusters were directly related to Allstate's management policies or general business operations because they "advised the management, represented Allstate, and negotiated on Allstate's behalf," all of which "required [their] exercise of discretion and independent judgment." *Cheatham*, 465 F.3d at 585.

On a related point, the district court found that FIE's business is not limited to claims *adjusting*; it also *sells* insurance products. Thus, the decisions made by claims adjusters affect FIE's customer base (*e.g.*, the policyholders) in that "their eligibility for continued coverage may be affected and their premium level may be affected." DOL Wage & Hour Div. Op. Ltr., at 3 (Nov. 19, 2002.) This point was somehow overlooked in *Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805

(2001) (decided under California law), in which the state court characterized FIE's business as "perform[ing] a specialized function . . . having delegated activities normally associated with an insurance business to other related companies." *Id*. at 823. That FIE's adjusters represent the "claims handling arm of the Farmers Insurance Group of Companies," *id*. (internal quotations omitted), does *not* mean they fall on the production side of the "administrative/production worker dichotomy." To place them there would elevate form — corporate form, to be precise — over substance. What matters is that, because they represent FIE to the public through their handling of claims and directly impact FIE's customer base, the adjusters' work "affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." § 541.202(b).

**[9]** In summary, the district court's factual findings confirm that FIE's liability, automobile damage and property adjusters satisfy both prongs of the duties test. They are therefore exempt from the FLSA's requirements. It necessarily follows, then, that Foremost adjusters are, too. The district court found that Foremost adjusters, to the extent they handle property damage to "mobile homes, RVs, and the like," rely on "specialized knowledge and discretion." In that respect, Foremost adjusters are akin to property adjusters; indeed, Foremost adjusters use the same computer software as property adjusters, with additions tailored to the unique structures that Foremost adjusters handle. And it naturally follows that multi-line adjusters are exempt under the FLSA, since they handle a mix of liability, property and automobile damage claims.

## C.   The $3,000 rule

**[10]** We make one additional point. In addition to lacking support in the record, the district court's "$3,000 rule" is, as both parties agree, simply unworkable in practice. As FIE points out, many states require employers to pay wages,

including overtime, to nonexempt employees more frequently than once a month. Under the $3,000 rule, FIE would not know whether a particular employee is due overtime until months or years down the road when the claim is finally resolved, because only then would FIE be able to calculate the average value of the claims on the adjuster's desk during any given pay period. And from pay period to pay period, an adjuster's status could change from exempt to nonexempt, *even though his core duties stayed the same*. Thus, to ensure it complied with payroll laws, FIE would have to track the daily activities of each adjuster, creating a significant administrative burden while denying it the flexibility the short test promises. *See Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 457 (4th Cir. 2003) (proposal requiring regular periodic reevaluation of an employee's exemption status is "untenable"). Even more problematic is the fact that the $3,000 rule runs afoul of public policy: an adjuster's right to overtime is tied to his ability to keep low his settlements with insured parties.

[11] Moreover, § 541.203 says that adjusters are exempt if they, like the adjusters in this case, determine coverage and liability, prepare estimates and negotiate settlements. Nothing in the regulation suggests that "smaller" claims — however that term would be defined — should be treated differently. If the DOL changes its view, it is, of course, free to amend the regulations.

## II. State Law Claims

### A. Michigan law

FIE argues that it is not subject to Michigan's overtime law, and that as a result, the district court's award of damages under that law was error. We agree.

[12] Under Michigan Compiled Laws 408.394, an employee cannot sue his employer under Michigan's mini-

mum wage law (*see* Mich. Comp. Laws § 408.381 *et seq.*) unless application of the FLSA's minimum wage provisions results in a lower "minimum wage." Like the FLSA, Michigan's minimum wage law requires employers to, among other things, pay employees time and one-half for any hours that the employee works over 40 in a workweek, unless one of the exemptions in the statute apply. *See* Mich. Comp. Laws § 408.384a.

Plaintiffs do not dispute that Michigan's minimum wage rate is equal to the FLSA's. Plaintiffs, though, argue that they may sue for overtime pay under Michigan's minimum wage law because its exemption for administrative employees is more narrowly defined than the FLSA exemption, resulting in a greater entitlement to wages under state law. That, plaintiffs argue, is the equivalent of a greater "minimum wage" for purposes of Mich. Comp. Laws § 408.394.

In *Alexander v. Perfection Bakeries, Inc.*, 705 N.W.2d 31 (Mich. Ct. App. 2005), the Michigan Court of Appeals held that the term "minimum wage" in MCL 408.394 does *not* include overtime pay. *Id.* at 165 (MCL 408.394 precluded employees' state law claims for overtime when minimum wage rates in federal and state law were equal). And in *Allen v. MGM Grand Detroit, LLC*, 675 N.W.2d 907 (Mich. Ct. App. 2003) (per curiam), the Michigan Court of Appeals held that merely because the statute of limitations for overtime claims under Michigan's minimum wage law is longer than its federal counterpart does not mean that the FLSA provides for a lower "minimum wage" during a period when the FLSA's limitations period has expired. *Id.* at 908. Contrary to plaintiffs' argument, *Allen* did not validate the view, originally espoused by a federal district court in Michigan,[7] that

---

[7] *See Zimmer v. Bergstrom, Quinn & Oole*, No. G88-506-CA1, 1989 WL 223111, at *3 (W.D. Mich. Oct. 16, 1989) (unpublished order) ("minimum wage" in MCL 408.394 encompasses overtime pay). *Zimmer* was decided before *Alexander*, and thus is of little, if any, persuasive value.

the term "minimum wage" encompasses the total sum which may be owing to the employee. In fact, *Allen* did just the opposite: after noting that the trial court had relied on the federal district court decision, the Michigan Court of Appeals concluded that "the trial court erroneously interpreted MCL 408.394." *Id.* at 909-10.[8]

**[13]** *Alexander* is indistinguishable from this case, and plaintiffs cite no authority that undermines its rationale. Accordingly, the district court erred by not dismissing plaintiffs' claims under Michigan law.

## B.   The remaining states

The district court said that its conclusions regarding whether FIE's adjusters are exempt under the FLSA apply with equal force to their state law overtime claims. If that were true, we would have to vacate the judgment below to the extent it awarded relief under state law, since we have already determined that all adjusters are exempt under the FLSA. Surprisingly, the parties dedicated little more than a few lines to this issue in the six briefs between them.

**[14]** Plaintiffs assert that FIE did not satisfy certain requirements for the administrative exemption under state law, requirements that go above and beyond what is required by the FLSA. At least on their face, the authorities that plaintiffs cite support their argument. For example, in Colorado, Min-

---

[8]Another panel of this Court, *see Veliz v. Cintas Corp.*, No. 04-16843, 2006 U.S. App. LEXIS 11997, at *7 n.2 (May 3, 2006), had certified the same issue to the Michigan Supreme Court, which denied review. The panel went on to hold, consistent with *Alexander*, that the term "minimum wage" does not include overtime pay. *Id.* at *7-8 ("There is no evidence that the Michigan Supreme Court would decide the issue differently from *Alexander*. We are, therefore, obligated to defer to the Michigan Court of Appeals' interpretation of 'minimum wage' . . . in [MCL] 408.394."). Since *Veliz* was unpublished, we are not bound by its ruling. Nevertheless, we agree with its analysis.

nesota and Oregon, exempt employees must *regularly* exercise discretion and independent judgment, *see* Minn. R. 5200.0200, Subp. 1.C; Or. Admin. R. § 839-020-0005(2)(b); 7 Colo. Code Regs. § 1103-1(5)(a), while the FLSA requires that their work "*include* the exercise of discretion and independent judgment," 29 C.F.R. § 541.200(a)(3) (emphasis added). Colorado and Oregon even impose somewhat unique requirements for exempt status. *See* Or. Rev. Stat. § 653.020(3)(a) (employee must "[p]erform[ ] predominantly intellectual, managerial or creative tasks"); 7 Colo. Code Regs. § 1103-1(5)(a) (employee must "directly serve[ ] the executive, and regularly perform[ ] duties important to the decision-making process of the executive").

**[15]** If the administrative exemption in Colorado, Minnesota and Oregon is truly narrower than the FLSA's administrative exemption, our decision today would not necessarily bar claims adjusters in those states from obtaining relief. *See Pac. Merch. Shipping Assoc. v. Aubry*, 918 F.2d 1409, 1425 (9th Cir. 1990) ("There is no indication that Congress, in enacting the FLSA[ ], intended to preempt states from according more generous protection to [its] employees. [T]he purpose behind the FLSA is to establish a national floor under which wage protections cannot drop, not to establish absolute uniformity in minimum wage and overtime standards nationwide at levels established in the FLSA." (emphasis omitted)). The record, however, is not sufficiently developed for us to tackle — in the first instance — the nuances of state law. Most importantly, it is unclear whether a requirement that the employee "regularly" exercise discretion and independent judgment entails something more than what the district court found in this case, or is simply another way of articulating the FLSA exemption. *Cf. Becker v. F&H Restaurant Group, Inc.*, 413 N.W.2d 202, 205 (Minn. Ct. App. 1987) (describing state's administrative exemption as containing "similar provisions of analogous federal law"). And the answer to that question may very well necessitate an in-depth look at opinion letters and other guidance released by the respective state

agencies. Before we tell the parties what state law requires in this area, we believe it is prudent to have the district court take another swipe at this, *after* the parties fully brief the scope of the administrative exemption under Colorado, Minnesota and Oregon law, as well as Illinois, New Mexico and Washington law.

## CONCLUSION

As to plaintiffs' FLSA claim, as well as their claims under Michigan law, we AFFIRM the district court's judgment as to the adjusters whom it ruled are exempt. We REVERSE the district court's judgment as to the remaining adjusters, with instructions to enter judgment in FIE's favor consistent with this opinion.

We REVERSE the judgment as to all claims under Colorado, Illinois, Minnesota, New Mexico, Oregon and Washington law, and REMAND them to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED. EACH PARTY TO BEAR ITS OWN COSTS ON APPEAL.**