# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 15, 2009        Decided January 5, 2010

No. 08-7146

JEROME ROBINSON-SMITH,
APPELLEE

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
APPELLANT

———

NO. 08-7147

CHRISTINE LINDSAY; ROBERT MCGRUDER,
INDIVIDUALLY AND ON BEHALF OF
ALL OTHER PERSONS SIMILARLY SITUATED,
APPELLEE

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
APPELLANT

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:01-cv-01340)

———

*Eric Hemmendinger* argued the cause for the appellant. *Glen Donath* and *Bruce S. Harrison* were on brief.

Charles E. Tompkins argued the cause for the appellees. *Thomas V. Urmy Jr.*, *Todd Heyman*, *Robert Ditzion*, *Joseph M. Sellers* and *Jenny R. Yang* were on brief. *Michael D. Hausfeld* entered an appearance.

Before: GINSBURG and HENDERSON, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Government Employees Insurance Corporation, better known as GEICO, underwrites, sells and services insurance policies covering automobiles and other property. Jerome Robinson-Smith, Christine Lindsay and Robert McGruder, the named plaintiffs in the two consolidated cases on appeal, worked for GEICO as "auto damage adjusters."[1] They sued GEICO for overtime benefits they claim they are owed under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et seq.*, which ordinarily requires employers to pay employees time-and-one-half for hours worked beyond forty per week unless the employees are exempt. GEICO considers auto damage adjusters exempt "administrative" employees. On cross motions for summary judgment, the district court, applying the so-called "short test" used by the United States Department of Labor

---

[1] The two appeals are *Robinson-Smith v. GEICO*, No. 08-7146 (filed Dec. 18, 2008), and *Lindsay v. GEICO*, No. 08-7147 (filed Dec. 18, 2008). More than 200 additional auto damage adjusters joined each case via the opt-in provision of the FLSA, 29 U.S.C. § 216(b); the *Lindsay* action includes more than 200 additional class members who are employed by GEICO in New York State and who joined the litigation pursuant to Federal Rule of Civil Procedure 23. Appellees' Br. i.

(Labor or DOL) to describe administrative employees, held that GEICO's auto damage adjusters do not exercise "sufficient" discretion and independent judgment to qualify for the exemption and granted the plaintiffs summary judgment.[2] GEICO appeals the judgment, arguing that the undisputed fact that the adjusters exercise "some discretion" means that they are exempt from overtime pay as administrative employees under the FLSA. For the following reasons, we agree with GEICO and reverse.

**I.**

GEICO employs at least three categories of personnel at varying levels of responsibility who may service a given automobile claim: the liability adjuster, the auto damage adjuster and the auto damage appraiser. At the higher end of the responsibility scale is the liability adjuster (a term used by the parties to also include a "claims service representative" and a "telephone adjuster"), who determines coverage and liability, sets reserves, works with lawyers and evaluates claims for lost wages, comparative negligence and personal injury. At the lower end is the auto damage appraiser, an entry-level employee who works under close supervision in GEICO drive-in locations inspecting damaged cars that remain in drivable condition. GEICO considers the former exempt as an administrative employee under the FLSA (and thus not entitled to overtime wages) but not the latter.

At a level of responsibility between the liability adjuster and the auto damage appraiser are the appellees: the auto damage adjusters. As the district court observed, auto damage adjusters (also known as "field adjusters") "assess, negotiate and settle automobile damage claims." *See Robinson-Smith v. Gov't*

---

[2]The district court had no occasion to decide whether the job of a GEICO auto damage adjuster is so easy a caveman could do it.

4

*Employees Ins. Co.*, 323 F. Supp. 2d 12, 15 (D.D.C. 2004). They spend a majority of their time appraising damaged vehicles and estimating repair costs but also negotiate and settle claims with body shops over repair costs and with insureds over total loss vehicles. A newly-hired GEICO employee typically works as an auto damage appraiser for a probationary period before being promoted, with sufficient experience, to auto damage adjuster. Once promoted, he takes on additional responsibility and autonomy. For example, he begins to handle total loss claims, which involve vehicles GEICO deems too damaged to repair. An auto damage adjuster also works in the field[3] (typically one or two days per week at a GEICO drive-in location but otherwise in the field) and under less direct supervision (usually on his own but with a ride-along supervisor about once a month). The average auto damage adjuster handles more than 1,000 claims per year, totaling over $2.5 million.

For most claims, the adjuster's main task is to determine how much GEICO should pay to restore a vehicle to its "pre-loss condition," using the most economical parts available unless safety is a consideration. In assessing vehicle damage and estimating repair costs, the adjuster relies on software that walks him through the appraisal process. He enters a vehicle identification number, or VIN, into a laptop computer with software that provides extensive information about the car. He then inspects the damaged vehicle and enters a description of the damage into the computer, which gives him information like the cheapest generic parts available or standard refinish times and material prices. An adjuster also makes decisions that are not dictated by the software, however, such as interviewing insureds about pre-existing damage, determining whether damage was caused by a covered event and recommending that payment be withheld on a claim if the damage did not result from a covered

---

[3]The "field" includes tow yards, body shops and residences.

loss. (He is not authorized to decide whether GEICO is liable for a given claim or to deny liability, however, tasks performed by the liability adjuster.) An adjuster also spends some time negotiating with shops over repair times for body work. The extent of such negotiations is disputed: One witness testified that "every job has . . . to be negotiated" but several others made clear that negotiating does not occupy a significant portion of an adjuster's time, no more than fifteen or twenty minutes per day. Other adjuster tasks include checking for indicia of fraudulent claims, determining whether to repair or replace a part, choosing which type of replacement part to use and adjusting the base value of a total loss vehicle to compensate for preexisting damage. GEICO supervisors initial each estimate and review some claims but not until the estimate is written and the claim paid.

Some claims involve vehicles that are so damaged they are declared a total loss. As a general rule, a vehicle is a total loss if the repair cost exceeds 75% of the vehicle value. While the software flags a vehicle as a potential total loss when its repair cost approaches 75% of the vehicle's value, it is the adjuster's task to decide whether it is economically feasible to repair a damaged vehicle or instead to pay the owner its value, which is sometimes based on adjuster estimates of repairing probable hidden damage in addition to visible damage. Adjuster determinations of whether to declare a vehicle a total loss can involve thousands of dollars in additional liability for GEICO. Approximately 20% of the claims the typical adjuster handles involve total loss vehicles, although plaintiff Lindsay testified that her proportion is about 30%. While fewer in number, total loss claims are more time consuming than partial loss claims because they involve several steps. After determining that a vehicle is a total loss, the adjuster first obtains the base valuation from the computer database. Depending on the similarity of comparable vehicles in the database, the adjuster then chooses that valuation or an alternative one from, for example, dealer

quotes, internet listings, classified advertisements or dealer invoices, making sure to adjust that valuation for any preexisting damage. He then prepares an estimate and presents it to the vehicle owner, who may accept the offer or request more money.

About 70% of total loss claims are settled on the first offer with no subsequent negotiation. For the remaining 30%, the adjuster initiates settlement negotiations over amounts ranging from nominal to thousands of dollars. In some regions of the country the adjuster can transfer a particular total loss claim to one of GEICO's "total loss" units after the initial offer, but in all regions the adjuster can pursue settlement beyond the initial offer under at least some circumstances. For example, the adjuster generally has full authority to settle a claim within his limits ($10,000 for a Level I adjuster or $15,000 for a Level II adjuster) if he can justify his decision within GEICO guidelines and based on his experience. Most claims are settled within the adjuster's limits but he may also recommend a larger settlement to his supervisor. Adjustments used to reach settlements include using an alternative base valuation, waiving prior damage or making a "customer service concession," although some of the adjustments are made only with supervisor approval. GEICO has no policy or set dollar amount in dispute that requires the adjuster to consult his supervisor about adjustments. Rather, an adjuster's decision to consult with his supervisor is made on a case-by-case basis and he typically makes minor concessions without supervisor approval. Nevertheless, some adjusters routinely call their supervisors in situations involving adjustments or concessions and at least one adjuster testified that she was required to do so.

Although the parties agree that the adjuster negotiates with insureds on total loss claims, they disagree on how often that occurs. At the high end, the parties agree that approximately 20% of the 1,000 yearly claims (or 200) involve total losses and

approximately 70% of the total loss claims (or 140) involve no negotiation at all. Based on these rough estimates, an adjuster probably handles about 60 claims per year involving customer negotiation over total losses. *See* Appellees' Br. 10 n.5 ("[A]t most only 6% of the claims handled by [auto damage adjusters] involve discussions with customers on total loss claims."). At the low end, a one-week sample of total loss claims involving forty-six adjusters nation-wide revealed that a little over 10% of the total loss claims—2 to 3% of all claims—apparently involved the exercise of discretion and independent judgment. (GEICO maintains that the exercise of discretion is involved in total loss settlements that deviate from the computer-generated estimate by $100 or more and, according to the chart attached to its summary judgment motion, most of the deviations involved customer negotiations.[4]) These potential negotiations, which amount to between 20 and 30 per year when extrapolated from the 1,000 yearly claims handled by the average GEICO adjuster, involved deviations ranging from $100 to $2,875. Thus, the record indicates that the typical number of customer negotiations regarding total loss vehicles is between 20 and 60 per year. Because this range includes only deviations of $100 or more from the computer-estimated vehicle value in total loss situations, it fails to capture negotiations involving partial loss claims or situations where an adjuster "holds firm" in declining to alter GEICO's initial offer.

---

[4]The appellees point out that of the 858 claims files GEICO produced, GEICO identified settlements involving deviations from the computer-generated value of $100 or more in only 20 of the 858 claims, or 2%. GEICO counters that it identified 24 such claims and that these were drawn only from the 182 total loss claims, meaning that deviations constituted 3% of all claims but 13% of total loss claims. At oral argument, GEICO asserted that there is no similar way to analyze adjuster discretion in partial loss claims.

**II.**

On cross motions for summary judgment, the district court held that the auto damage adjusters do not come within the FLSA administrative exemption because their primary duty does not "include[] the exercise of discretion and independent judgment." *See Robinson-Smith*, 323 F. Supp. 2d at 26. Although it recognized that "some discretion is certainly exercised by the adjusters," it was satisfied that the discretion exercised was not "sufficient" because "the vast majority of the adjusters' work consists of using their training and skills to assess the value of the damage to the vehicle in accordance with the standards laid out by GEICO." *Id.* It also found that the adjusters' negotiations are "limited in scope by both the information and standards contained in the computer software and the guidelines and limits on negotiating authority laid out by GEICO." *Id.* In reaching its conclusion, the district court found the reasoning of other district court decisions persuasive, particularly *In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation*, 300 F. Supp. 2d 1020 (D. Or. 2003). *See Robinson-Smith*, 323 F. Supp. 2d at 25 n.7 ("Although not controlling precedent in this Court, the facts surrounding the *In re Farmers* decision concerning the Farmers auto physical damage adjusters are nearly identical to those at issue here, and the Court finds the reasoning [in *Farmers*] . . . to be persuasive."). Immediately after the district court order issued on July 1, 2004, GEICO converted its auto damage adjusters to non-exempt status pending the outcome of this appeal. The district court subsequently granted summary judgment to the *Lindsay* adjusters on their FLSA claims on September 8, 2006 and on their New York state claims on March 23, 2007.

But the *Farmers* decision was reversed by the Ninth Circuit in October 2006, in an opinion that rejected the precise language the district court had relied on here. *See In re Farmers Ins.*

*Exch., Claims Representatives' Overtime Pay Litig.*, 466 F.3d 853 (9th Cir. 2006), *as amended*, 481 F.3d 1119, 1131 n.9 (9th Cir. 2007) ("For those reasons, we disagree with the district court's legal conclusion, quoting the language of the regulations, that an automobile damage adjuster's primary duties 'require the use of skill in applying techniques, procedures and specific standards, not the use of discretion and independent judgment.'" (quoting 29 C.F.R. § 541.207(b))).  One month later, in November 2006, GEICO moved for reconsideration of the summary judgment rulings in both *Robinson-Smith* and *Lindsay*, citing the Ninth Circuit's reversal in *Farmers* as well as a recent Seventh Circuit decision, *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 874-75 (7th Cir. 2008), holding automobile insurance adjusters exempt on similar facts.  On January 24, 2008, the district court denied GEICO's motion to reconsider and also explained that its earlier grant of summary judgment to the *Lindsay* plaintiffs was based on the reasoning in its 2004 *Robinson-Smith* opinion.  The two appeals, which were consolidated on February 4, 2009, followed.

### III.

Whether an employee comes within the FLSA administrative employee exemption from overtime benefits is a question of law.  *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).  GEICO bears the burden of establishing that its auto damage adjusters fall within the exemption.[5]  *See*

---

[5]Our sister circuits variously state that employers must meet this burden by a "preponderance of the evidence," *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 507-08 (7th Cir. 2007), by "clear and affirmative evidence," *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008) (internal quotations omitted), or by "clear and convincing evidence," *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 692 n.3 (4th Cir. 2009).  We have had no occasion to determine the proper standard but conclude that, on the

10

*Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). In determining whether GEICO has met its burden, we review *de novo* the district court's grant of summary judgment. *See Verizon Wash., D.C. Inc. v. Commc'ns Workers of Am.*, 571 F.3d 1296, 1301 (D.C. Cir. 2009). Each party believes that it is entitled to prevail even if such factual disputes as exist are resolved against it. Our task is to ensure that the district court correctly applied the law to the undisputed material facts. *See* Fed. R. Civ. P. 56(c); *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1279 (D.C. Cir. 1994) (citing *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 284 (D.C. Cir. 1993)).

**A.**

Under the FLSA an employee is ordinarily entitled to pay equal to one and one-half times his normal hourly wage for all hours worked beyond forty per week. *See* 29 U.S.C. § 207(a)(1). Certain employees, however, including those who work in a "bona fide executive, administrative, or professional capacity," are exempt from the overtime provision. *Id.* § 213(a)(1). The DOL regulation in effect when these suits were filed contains two tests governing whether an employee works in a "bona fide administrative capacity": (1) a generally applicable "long test" and (2) a "short test" for employees making more than $250 per week. *See* 29 C.F.R. § 541.2 (2003) (unless otherwise noted, all subsequent references to the Code of Federal Regulations are to the 2003 version).[6] The short test,

---

largely undisputed record before us, GEICO has satisfied its burden no matter which standard applies.

[6]Shortly after the district court granted summary judgment to the adjusters, the DOL substantially revised the FLSA overtime exemption regulations effective August 2004. The revisions were meant to "consolidate and streamline" the old regulations and to be "consistent with" the old short test. 69 Fed. Reg. 22,122, 22,126 &

which governs the appellees, provides:

> The term *employee employed in a bona fide * * *
> administrative * * * capacity* . . . shall mean any
> employee . . .[w]hose primary duty consists of . . . the
> performance of office or non-manual work directly
> related to management policies or general business
> operations of his employer or his employer's
> customers, . . . which includes work requiring the
> exercise of discretion and independent judgment . . . .

*Id.* This test has three prongs: first, the employee must make more than $250 per week (satisfied here); second, the employee's primary duty must be administrative in nature; third, his primary duty must include work requiring the exercise of discretion and independent judgment. *See id.* The third prong of the short test is easier to satisfy than the long test's requirement that an administrative employee exercise discretion "customarily and regularly." *Id.* § 541.2(b); *see Dymond v. U.S. Postal Serv.*, 670 F.2d 93, 95 (8th Cir. 1982) (unlike long test, short test is "more liberal standard requiring that their duties merely 'include' work requiring the exercise of discretion and independent judgment").

The district court found that the adjusters earn more than $250 per week and that their primary duty is administrative, *i.e.*, that it consists of the performance of office or non-manual work "directly related to GEICO's management policies and business operations."[7] *Robinson-Smith*, 323 F. Supp. 2d at 23; *see* 29

---

22,139 (Apr. 23, 2004). For this reason, we cite the new regulations where appropriate. *See Roe-Midgett*, 512 F.3d at 870 (although not directly applicable, "the new regulations are nonetheless informative").

[7]In a footnote the appellees contend that the latter conclusion is incorrect, *see* Appellees' Br. 28 n.19, but they otherwise fail to support

12

C.F.R. § 541.206(a) (employee employed in bona fide administrative capacity "must have as his primary duty office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers"). But the court found that GEICO failed to satisfy its burden on the third prong. The only issue briefed and argued to us, therefore, is whether the district court correctly held that the primary duty of the GEICO auto damage adjuster does not include "discretion and independent judgment."[8] *See* Appellant's Br. 1 & Appellees' Br. 1. Such discretion connotes "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). It

that contention and thus give the court no basis on which to disturb the district court's holding. We note, however, that the district court's conclusion is consistent with Labor's regulations. *See* 29 C.F.R. § 541.205(c)(5) (listing "claim agents and adjusters" as examples of employees whose work is "directly related to management policies or general business operations").

[8]The *Lindsay* plaintiffs brought claims based on a New York statute that the parties agree is at least as protective as the FLSA because it incorporates the FLSA administrative employee exemption. *See* 12 N.Y.C.R.R. § 142-2.2 (requiring that overtime be paid "in the manner and methods provided in and subject to the exemptions of" FLSA); *Lindsay v. GEICO*, C.A. No. 04-1213, slip op. at 1 (D.D.C. Mar. 27, 2007) ("The parties agree that New York state law expressly adopts in its entirety the federal exemptions from overtime that are at issue in this case."). The appellees argue that the administrative employee exemption is narrower under New York law than under the FLSA and that, if we reverse the FLSA claims, the district court should in the first instance rule on the New York state claims. *See* Appellees' Br. 27 n.18. GEICO apparently disagrees. *See* Appellant's Reply Br. 14 n.6. Because the parties brief this issue by footnote only, we do not reach it. *See, e.g.*, *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999).

is distinguished from the mere "use of skill in applying techniques, procedures, or specific standards." *Id.* § 541.207(b)(1); *see id.* § 541.207(c)(2) (typical examples of employees who use skill are "inspectors" who do "specialized work along standardized lines involving well-established techniques and procedures which may have been cataloged and described in manuals or other sources" and who may have "leeway in the performance of their work but only within closely prescribed limits"); *see also* 29 C.F.R. § 541.202(e) (2009) (test "does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work"). An employee satisfies this requirement only if he "has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." 29 C.F.R. § 541.207(a);[9] *cf. id.* § 541.207(d)(1) (discretion not exercised in matters of significance by truck driver deciding which route to follow, shipping clerk deciding method of packing and mode of shipping small orders or bookkeeper deciding which ledger to post first).

**B.**

To establish the third prong of the short test for an exempt administrative employee, GEICO must show that the auto damage adjuster's primary duty (1) includes work requiring the exercise of discretion and independent judgment (as distinguished from the mere use of skill in applying well established techniques) and that the discretion is exercised (2)

---

[9]The last requirement has now been incorporated into the revised regulation, which applies to employees "[w]hose primary duty includes the exercise of discretion and independent judgment *with respect to matters of significance*." 29 C.F.R. § 541.200(a)(3) (2009) (emphasis added).

free from immediate supervision and (3) with respect to matters of significance. We conclude that GEICO has done so.

First, the undisputed record shows that the primary duty of a GEICO auto damage adjuster, which consists of the assessment, negotiation and settlement of automobile damage claims, includes the exercise of discretion and independent judgment. Although the parties disagree on how much discretion the adjuster exercises, no one disputes that he exercises "some." *See Robinson-Smith*, 323 F. Supp. 2d at 26; Appellees' Br. 52 ("[T]here is no question that [auto damage adjusters] likely exercise 'some discretion' in their negotiations, whether they take place with auto body shops or customers . . . ."). As noted above, the GEICO auto damage adjuster exercises discretion as often as 60 times per year in negotiations with customers over total loss claims alone. The frequency of such negotiations may be enough to satisfy even the "customarily and regularly" requirement of the "long test." *See* 29 C.F.R. § 541.701 (2009) ("Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."). In any event, engaging in total loss negotiations even 20 times per year satisfies the short test requirement that the adjuster's primary duty "include[]" the exercise of discretion and independent judgment.[10] *See* 29 C.F.R. § 541.2.

---

[10]The total amount of discretion and independent judgment exercised by the adjuster is probably higher as these numbers include neither the exercise of judgment in the appraisal process, specifically as related to negotiations with repair shops over partial loss vehicles, nor the exercise of discretion by the adjuster who unilaterally decides not to increase a settlement offer to a total loss claimant who requests one.

The appellees respond that these sporadic total loss negotiations are "insufficient" to satisfy the discretion and independent judgment prong. Appellees' Br. 24. But the regulation requires that the adjuster's primary duty "include[]" the exercise of discretion and independent judgment; it does not specify how frequently discretion need be exercised. *See* 29 C.F.R. § 541.2; *see also* 69 Fed. Reg. 22,122, 22,143 (Apr. 23, 2004) ("[F]ederal court decisions have recognized that the current 'short' duties test does not require that the exempt employee 'customarily and regularly' exercise discretion and independent judgment, as does the effectively dormant 'long' test."); *see, e.g.*, *O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1454 (9th Cir. 1988) (had district court correctly applied short test rather than long test, "it could only have come to the ultimate conclusion that [plaintiff] exercised some discretion and independent judgment during the course of his job, and therefore [he] was an exempt administrative employee"). Even assuming the district court correctly held that "the vast majority of the adjusters' work consists of using their training and skills to assess the value of the damage to the vehicle in accordance with the standards laid out by GEICO," *Robinson-Smith*, 323 F. Supp. 2d at 26, we conclude that their primary duty nevertheless "includes" work requiring the exercise of discretion and independent judgment.

Second, the auto damage adjuster has the power to make independent choices "free from immediate direction or supervision." 29 C.F.R. § 541.207(a). Although the district court held that the adjusters' negotiations were too structured by the estimating process and GEICO's guidelines to satisfy this requirement, *see Robinson-Smith*, 323 F. Supp. 2d at 25-26, freedom from immediate direction "does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review." *Id.* § 541.207(e)(1); *see also* 29 C.F.R. § 541.202(c) (2009) ("[E]mployees can exercise discretion and independent

judgment even if their decisions or recommendations are reviewed at a higher level."). Here, the adjusters worked in the absence of immediate supervision the majority of the time and made decisions that were reviewed only after the estimate was written and the claim paid. Moreover, while it is true that some adjusters routinely called their supervisors in situations involving non-minor adjustments or concessions, there was no GEICO policy or procedure requiring them to do so. *See Robinson-Smith*, 323 F. Supp. 2d at 17 (adjuster "would not consult his supervisor, so long as he knew the supervisor would approve the additional credit"). In fact, adjusters have full authority to settle claims within their limits of $10,000 or $15,000 as long as they can justify their decision on the facts of the claim and within GEICO guidelines or prior practice. Our sister circuits have held exempt employees who possessed similar levels of autonomy. *See Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 869 (7th Cir. 2008) (finding exempt adjusters who "may settle claims of up to their $12,000 limit of authority" and whose supervisors "need not formally approve the actual amount of settlement or underlying estimate, though they informally review an [adjuster's] work for errors"); *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 466 F.3d 853 (9th Cir. 2006), *as amended*, 481 F.3d 1119, 1132 (9th Cir. 2007) (finding exempt claims adjusters who have discretion to settle claims within settlement authority). We also agree with the *Farmers* holding that the ample unsupervised discretion of the GEICO adjuster distinguishes him from the "claims specialist" discussed in the DOL opinion letter cited by the appellees, as the latter "could not conduct additional investigation without supervisor approval and was 'so closely supervised' that he 'd[id] not have the authority to make independent choices.'" *Id.* (citing DOL Wage & Hour Div. Op. Ltr., at 2, 6 (Aug. 26, 2005)) (alteration in *Farmers*).

Finally, the adjuster makes choices "with respect to matters of significance." 29 C.F.R. § 541.207(a); *see id.* § 541.207(d)(2)

(employees exercise discretion with respect to matters of significance if they "exercise authority within a wide range to commit their employer in substantial respects financially or otherwise"). He is empowered to negotiate with claimants and body shops and settles claims up to $10,000 or $15,000—all actions that bind GEICO financially. *See Roe-Midgett*, 512 F.3d at 874 (adjusters "routinely use their discretion and independent judgment to make choices that impact damage estimates, settlement, and other 'matters of significance'") (citing 29 C.F.R. § 541.207(a)); *see also* 29 C.F.R. § 541.202(b) (2009) (factors that bear on discretion and independent judgment determination include "whether the employee has authority to commit the employer in matters that have significant financial impact"); *cf. id.* § 541.205(b)(2) (work of employees "performing routine clerical duties" such as "messenger boy . . . carrying large sums of money" or worker "operating very expensive equipment" is not of substantial importance). Under these circumstances, we conclude that the GEICO auto damage adjusters exercise discretion free from immediate direction or supervision and with respect to matters of significance, making them exempt administrative employees under the FLSA and the applicable DOL regulations.

Although acknowledging the adjusters' "occasional exercise of discretion," the appellees nevertheless argue that it "is immaterial because it is not an aspect of the [auto damage adjusters'] primary duty, which is non-exempt appraisal work." Appellees' Br. 52; *see id.* at 23 ("the essence of the appraiser tasks GEICO identifies . . . is the determination of facts" and "[s]uch fact-finding is non-exempt work"). As we suggested above, however, the regulations do not define "primary duty" so narrowly. An administrative employee's "primary duty" does not consist of one specific task but rather of "administrative

duties" generally[11]—and, as in *Roe-Midgett*, "appraising damage is included among many duties [the adjusters] perform in the course of adjusting auto damage claims." 512 F.3d at 875. But even if we were inclined to define the adjuster's "primary duty" as narrowly as the appellees request, their own authority shows that even employees engaged primarily in fact-finding work may yet come within the administrative employee exemption provided they exercise discretion and independent judgment. *See* DOL Op. Ltr. (Oct. 24, 1957) (employees who primarily engage in appraisal work to arrive at amount of vehicle loss may, if "given reasonable latitude in carrying out negotiations

---

[11]The section defining "primary duty" states that an employee employed in a "bona fide administrative capacity . . . must have as his primary duty office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers." 29 C.F.R. § 541.206(a). The same section refers, for additional guidance, to the definition of "primary duty" in the "executive" employee exemption section. *Id.* § 541.206(b). The latter regulation specifies that an executive is exempt if, *inter alia*, his primary duty "consists of the management of the enterprise," *id.* § 541.1, which generally means an employee who spends "over 50 percent of his time  in managerial duties," *id.* § 541.103. An employee has "administration" as his primary duty if his work "consists of" the "performance of office or non-manual work directly related to management policies or general business operations of his employer," *id.* § 541.2(a)(1), and he spends more than half of his time performing such "administrative duties," *see id.* §§ 541.103, 541.206(b). *See Shockley v. City of Newport News*, 997 F.3d 18, 28 (4th Cir. 1993) ("[T]he short test for determining whether an employee is employed in an administrative capacity requires proof either that the employee spends half his time on administrative duties or that administrative duties have special significance relative to the employee's other duties."). Although the appellees argue that their "primary duty" should be narrowly defined as "appraisal work," Appellees' Br. 52, they nonetheless expressly rely on *Shockley*'s language in their brief, *id.* 29.

with the insured," exercise "the kind of discretion and judgment to qualify for the exemption"). Likewise, Labor's revised regulation exempts an insurance claims adjuster if he performs activities such as "inspecting property damage" and "reviewing factual information to prepare damage estimates," *see* 29 C.F.R. § 541.203(a) (2009)—tasks more concisely known as "appraisal" and "fact-finding."

Indeed, the latter revised regulation bolsters our conclusion that GEICO's auto damage adjusters are exempt as administrative employees. It provides that:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption . . . if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a) (2009).[12] The district court found that GEICO's adjusters "cannot be automatically classified as exempt employees" because they perform only three of the seven activities listed therein—inspecting property damage, preparing damage estimates and negotiating settlements. *See Robinson-Smith*, 323 F. Supp. 2d at 22. To those we would add two more activities the adjusters perform, at least in part: they interview insureds about partial loss claims; and, although they

---

[12]Although the revised version was not in effect when these suits were filed, the Labor Secretary described the subsection as "consistent with" then-current regulations, case law and a DOL opinion letter. 69 Fed. Reg. at 22,144-45; *see Roe-Midgett*, 512 F.3d at 870-71.

do not "evaluate or determine coverage issues" in the way a liability adjuster does, they do assess, as in *Roe-Midgett*, to the extent that they evaluate and make recommendations regarding evidence of preexisting damage and indicia of fraud. *See Roe-Midgett*, 512 F.3d at 868, 874 (although adjusters "do not make coverage or liability determinations," they "make coverage recommendations to their superiors" regarding fraud and preexisting damage issues on claims). Thus, like the *Farmers* and *Roe-Midgett* adjusters, GEICO's auto damage adjusters can be said to perform a majority of the listed activities. *See Roe-Midgett*, 512 F.3d at 874 ("The balance of [plaintiffs'] day-to-day responsibilities mirror the duties the new regulations attribute to exempt 'claims adjusters,' . . . ."); *Farmers*, 481 F.3d at 1129 ("The district court's findings almost track word for word the language in § 541.203.").

The actions the GEICO adjuster takes are, in fact, virtually identical to those of the adjusters found exempt in *Roe-Midgett*, with the significant difference being that, on the one hand, the GEICO adjuster interviews only insureds about preexisting damage (not witnesses and law enforcement) but is authorized to handle total loss claims (not just partial loss claims) on the other. *See Roe-Midgett*, 512 F.3d at 868-69 (*Roe-Midgett* adjusters "interview claimants, witnesses, and where relevant, police personnel" but prepare estimates for partial loss claims only and have no authority to negotiate with insureds). Given the district court's conclusion—and the appellees' concession—that negotiating with insureds involves "some discretion," *see Robinson-Smith*, 323 F. Supp. 2d at 26 & Appellees' Br. 52, the fact that the GEICO adjuster engages in such negotiations over total loss claims means he is an even better fit for the administrative employee exemption than the *Roe-Midgett* adjusters. *See Farmers*, 481 F.3d at 1131 (noting total loss claims are often difficult to negotiate and settle and require exercise of discretion and independent judgment beyond computer skill). In finding the *Roe-Midgett* adjusters exempt,

the Seventh Circuit joined every circuit that has recently considered the application of the administrative employee exemption to claims processing employees. *See Roe-Midgett*, 512 F.3d at 875 (citing *Farmers*, 481 F.3d at 1132; *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585-86 (5th Cir. 2006); *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 998, 1001 (8th Cir. 2003)). In accord with these decisions, we conclude that the primary duty of GEICO's auto damage adjusters includes the exercise of discretion and independent judgment, and thus they come within the administrative employee exemption from the overtime pay requirements of the FLSA.

## IV.

For the foregoing reasons, we reverse the orders of the district court, remand and direct the court to enter judgment for GEICO on the FLSA claims and to conduct further proceedings regarding the *Lindsay* plaintiffs' state claims consistent with this opinion. *See supra* note 8.

*So ordered.*