# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 14, 2013        Decided June 4, 2013

No. 12-7064

LOUIS P. CANNON, ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00133)

*Matthew August LeFande* argued the cause and filed the briefs for appellants.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: HENDERSON, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Like many state and local governments, the District of Columbia has passed laws against "double-dipping": the simultaneous drawing of both a pension and a salary by a retired employee who has been rehired by the District. The District enforced a law aimed at curbing double-dipping against the six plaintiffs, sharply reducing their salaries by the amount of their pension payments. We hold that the plaintiffs' federal challenges to this action are meritless except in one respect. In slashing three of the plaintiffs' salaries, the District overstepped the boundaries of the Fair Labor Standards Act.

I

The plaintiffs are retired from the Metropolitan Police Department (MPD). During their time with the MPD, they contributed portions of their salaries to the Police Officers' and Firefighters' Retirement Plan (Retirement Plan), which provides retirement and disability benefits to employees of the MPD and the District of Columbia Fire Department. Upon retirement, each of the plaintiffs began receiving annuities from the Retirement Plan.

Under § 5-723(e) of the D.C. Code, the salary of a retired MPD employee drawing on a Retirement Plan pension, who has been rehired by the District, is offset by the amount of the pension payments:

> Notwithstanding any other provision of law, the salary of any annuitant who first becomes entitled to [a Retirement Plan pension], after November 17, 1979, and who is subsequently employed by the government of the District of Columbia shall be reduced by such amount as is necessary to provide that the sum of such annuitant's annuity under this subchapter and

> compensation for such employment is equal to the salary otherwise payable for the position held by such annuitant.

D.C. CODE § 5-723(e). In other words, the statute requires the District to reduce the salary of employees who simultaneously draw money from the Retirement Plan. Other state and local governments across the nation also forbid double-dipping by employees. *See, e.g.*, *Connolly v. McCall*, 254 F.3d 36, 43 (2d Cir. 2001) (per curiam) (New York's "policy of preventing receipt of a public pension while also receiving a public salary reflects the notion that such simultaneous income streams could constitute an abuse of the public fisc." (internal quotation marks omitted)); *Mascio v. Pub. Employees Ret. Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir. 1998) (describing an Ohio statute preventing double-dipping by state elected officials).

Between 2008 and 2011, the District rehired the plaintiffs to work in its Protective Services Police Department (Protective Services), a local law enforcement agency that protects government agencies and property. Notwithstanding § 5-723(e), through the end of 2011, the District paid the plaintiffs their full salaries while they continued to receive Retirement Plan annuities. On October 12, 2011, however, the District sent the plaintiffs letters notifying them that in November it would begin reducing their salaries by the amount of their pension payments. The plaintiffs were told that they could choose to suspend those payments as an alternative to the salary offset. None did. November passed, and the double-dipping continued.

With the coming of the new year, however, the District followed through on its warning and enforced § 5-723(e) against the plaintiffs. The effect was dramatic. One of the plaintiffs, Harry Weeks, received no pay for the first pay period

of 2012 after the District deducted the amount he received in pension payments from his Protective Services salary.

When the plaintiffs learned that the District had reduced their salaries, they immediately filed suit on January 26, 2012, claiming numerous violations of federal and D.C. law arising out of the salary offset. Two weeks after the plaintiffs sued, the District fired plaintiff Louis Cannon from his position as chief of Protective Services. At the same time, the plaintiffs discovered that the District had not paid them by direct deposit for the preceding pay period. Instead, they were issued paper paychecks. The plaintiffs amended their complaint on February 14 to allege that the firing and the missed payday were retaliatory.

Only the plaintiffs' federal claims are at issue in this appeal. Three of the plaintiffs assert that they did not receive the minimum wage required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and all of them claim that: the salary offset violated the Fifth Amendment, the manner in which the District administered the offset violated the Equal Protection Clause, and the District violated the First Amendment by retaliating against them for filing their suit. On February 23, 2012, the District moved to dismiss the plaintiffs' suit, or, in the alternative, for summary judgment. The plaintiffs also moved for summary judgment on the FLSA claim. On July 6, 2012, the district court entered summary judgment for the District on the FLSA and First Amendment claims, and dismissed the plaintiffs' Fifth Amendment claims under Fed. R. Civ. P. 12(b)(6). The district court declined to exercise supplemental jurisdiction over the plaintiffs' remaining D.C. law claims. *See Cannon v. District of Columbia*, 873 F. Supp. 2d 272, 287-88 (D.D.C. 2012).

The plaintiffs timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Our review is de novo. *Figueroa v. D.C. Metro. Police Dep't*, 633 F.3d 1129, 1131 (D.C. Cir. 2011). We also review a Rule 12(b)(6) dismissal de novo and affirm if, accepting all allegations in the plaintiffs' complaint as true, they have nevertheless failed to state plausible grounds for relief. *Winder v. Erste*, 566 F.3d 209, 213 (D.C. Cir. 2009).

## II

We first address the FLSA claim brought by plaintiffs Sheila Ford-Haynes, Gerald Neill, and Weeks. They allege that the District has failed to pay them the federal minimum wage required by the FLSA since January 2012, when the District began applying the salary offset. Weeks also claims that the FLSA entitles him to overtime. In response, the District asserts that these employees are not covered by the FLSA, and that the District had no obligation to pay them minimum wage and overtime.

An employee is entitled to the federal minimum wage and overtime unless specifically exempted by the FLSA. *See Smith v. Gov't Emp. Ins. Co.*, 590 F.3d 886, 892 (D.C. Cir. 2010). The employer bears the burden of demonstrating that its employee is exempt, and exemptions are "narrowly construed." *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008) (citation omitted).

The District contends that Ford-Haynes, Neill, and Weeks are exempt under the terms of § 13(a)(1) of the FLSA because they are employed in a "bona fide executive, administrative, or

professional capacity," as those terms are defined by Department of Labor (DOL) regulations. 29 U.S.C. § 213(a)(1). One such regulation requires that employees exempted under § 13(a)(1) be "compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities." 29 C.F.R. § 541.600(a); *see also Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 847-51 (6th Cir. 2012) (describing the "salary basis test"); *Hilbert v. District of Columbia*, 23 F.3d 429, 431 (D.C. Cir. 1994) (same).[1] To be "compensated on a salary basis," an employee must "regularly receive[] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).

The crux of the dispute is whether Ford-Haynes, Neill, and Weeks receive less than $455 per week in compensation; if so, the District fails the salary basis test and they are covered by the FLSA's minimum wage and overtime requirements. Both parties agree that the amount each of these plaintiffs receives in their paychecks has fallen below $455 per week since January 2012. There is likewise no disagreement that if these plaintiffs' annuities are counted as compensation, they are paid well above $455 per week, and the District is entitled to summary judgment.

---

[1] The employer must also demonstrate that its employee performs duties associated with "bona fide executive, administrative, or professional" employees, as set forth in DOL regulations. *Orton*, 668 F.3d at 846 (citation omitted). The plaintiffs do not dispute that their duties fit the exemption. The dispute is whether they are "compensated on a salary basis."

We hold that the District may not count these plaintiffs' annuities as compensation for purposes of the salary basis test. Under no reasonable reading of the term can the pension payments be considered "compensation" for these plaintiffs' current work. Rather, the money they receive from their pensions is a retirement benefit, earned over the course of their past employment with the MPD, not their present work for the District. The pensions were funded in part by the plaintiffs' own required contributions, which were automatically deducted from their MPD paychecks. *See* District of Columbia Retirement Board, District of Columbia Police Officers' and Firefighters' Retirement Plan, Summary Plan Description – 2007, at 9 (2007), *available at* http://dcrb.dc.gov/publication/police-officers-and-firefighters-summary-plan-description (last visited April 23, 2013).[2] There is no connection between their pensions and the work they currently perform for the District, and thus no sense in which their annuities constitute "compensation" for that work.

Conversely, as the plaintiffs correctly argue, their compensation comes in the form of the salaries the District pays them. But the District slashed those salaries. As paychecks in evidence demonstrate, Ford-Haynes, Neill, and Weeks did not actually receive $455 per week in pay once the District began applying the offset. Thus, the District cannot carry its burden of showing that these three plaintiffs are compensated "at a rate of not less than $455 per week."

The District argues that the annuities became compensation through the operation of § 5-723(e). According

---

[2] The District of Columbia Retirement Board administers the Retirement Plan. This document, which summarizes the operation of the pension fund for its beneficiaries, is available on the Retirement Board's website. We take judicial notice of its contents. *See* FED. R. EVID. 201.

to the District, because the D.C. Code required the District to reduce the plaintiffs' salaries so that the sum of their annuities and the "compensation for [their] employment" equals the salaries they were otherwise entitled to receive, the annuities are the functional equivalent of salary. That is not a reasonable reading of the D.C. Code. Section 5-723(e) provides no authority for the District to claim that pension payments may be "included as salary," Appellee's Br. at 21, or that they have been transformed into compensation. Indeed, the statute explicitly distinguishes between the annuities and "compensation." *See* D.C. CODE § 5-723(e) (stating that a re-employed annuitant's salary "shall be reduced by such amount as is necessary to provide that the sum of such annuitant's annuity . . . and *compensation for such employment* is equal to the salary otherwise payable for the position . . . ." (emphasis added)).

The District also asserts that the plaintiffs' pension payments should be considered compensation because the plaintiffs were given the choice between accepting the salary offset and suspending annuities in the letters the District sent them in October 2011. Asking the plaintiffs to choose between losing their pension payments and taking a pay cut to satisfy § 5-723(e) does not convert the annuities into compensation for purposes of the FLSA. Indeed, placing this choice in the plaintiffs' hands merely underscores the salient point in our analysis: their pensions are not contingent upon their current work. The District could not force the plaintiffs to suspend receipt of the pension payments. Whatever else it may have authorized the District to do, § 5-723(e) surely does not allow the District to interfere with their pensions. It directs the District to reduce the *salaries* of double-dipping employees, while leaving annuity payments unaffected. Had the District invoked § 5-723(e) to reduce the plaintiffs' salaries to $455 per week, it would be in compliance with the FLSA. But for these

three plaintiffs, the District went further. The choice described in the October 2011 letters does not muddy a record that is sufficiently clear: the District has paid these three plaintiffs less than $455 per week since January 2012.

Ford-Haynes, Neill, and Weeks do not receive the $455 weekly compensation necessary to qualify for the exemption as "bona fide executive, administrative, or professional" employees. Because the District raises no other defense, we hold that it has violated the FLSA. We therefore reverse the grant of summary judgment against Ford-Haynes, Neill, and Weeks on their FLSA claim and direct that summary judgment be entered for those three plaintiffs on that claim. As the parties have not briefed the issues of back pay and liquidated damages, the extent of the District's FLSA liability remains to be determined. On remand, therefore, the district court should calculate any back pay and damages to which these plaintiffs may be entitled under 29 U.S.C. § 216.

## III

The district court found the plaintiffs' constitutional claims meritless, and we agree.

## A

All of the plaintiffs claim a "cognizable property interest" in the simultaneous receipt of their annuities and full salaries. The District's use of the offset, they argue, amounted to a taking and interfered with that property interest. The plaintiffs seek to avoid the force of § 5-723(e) by arguing that it has been superseded by amendments to § 1-611.03(b), a different section of the D.C. Code that provides, in relevant part: "No reduction shall be made to the pay of a reemployed individual for any retirement benefits received by the reemployed

individual pursuant to 5 U.S.C. § 8331 . . . ." D.C. CODE § 1-611.03(b).

It is true that, as a result of these amendments, retirees from District employment who receive pension benefits pursuant to 5 U.S.C. § 8331, the Civil Service Retirement Act (CSRA), may continue to receive benefits while retaining their full salary if they are rehired by the District. But this does not help these plaintiffs, because they do not receive pension benefits under 5 U.S.C. § 8331. The Retirement Plan is separate from the CSRA. "The [CSRA] codified at 5 U.S.C. §§ 8331 *et seq.*, provides for payment of annuities to retired federal employees and their surviving spouses." *Fornaro v. James*, 416 F.3d 63, 64 (D.C. Cir. 2005). In the past, when the "District personnel apparatus" was "awkwardly meshed . . . with the federal personnel system," *District of Columbia v. Thompson*, 593 A.2d 621, 632 (D.C. 1991) (internal quotation marks omitted), some District employees participated in the federal pension program established under the CSRA. 51 D.C. Reg. 8779 (Sept. 10, 2004). The Retirement Plan, by contrast, originated in a wholly different statute, the "stated purpose" of which was "to provide benefits *comparable* to those given under the" CSRA. *Ridge v. Police & Firefighters Ret. & Relief Bd.*, 511 A.2d 418, 427 (D.C. 1986) (emphasis added).

The plaintiffs have no entitlement to *both* full salary *and* their annuities. Lacking such an entitlement, their due process and takings claims fail. *See Hettinga v. United States*, 677 F.3d 471, 479-80 (D.C. Cir. 2012) (per curiam) (holding that plaintiffs must plead a "threshold requirement" of due process claims: "that the government has interfered with a cognizable liberty or property interest"); *see also Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) ("[A]n individual

claiming a protected interest must have a legitimate claim of entitlement to it.").

B

Around the same time that the District reduced the plaintiffs' salaries, the plaintiffs allege that the MPD gave large raises to senior officers who, like the plaintiffs, were retirees who had been rehired by the District and collected both salaries and Retirement Plan annuities. Although the officers were subject to the salary offset, the raises meant that their incomes remained roughly what they had been before the offset.

The plaintiffs argue that exposing them to the full force of the offset while shielding others from its impact violated their right to equal protection of the laws. "To prevail on an equal protection claim, the plaintiff must show that the government has treated it differently from a similarly situated party and that the government's explanation for the differing treatment does not satisfy the relevant level of scrutiny." *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 215 (D.C. Cir. 2013) (internal quotation marks omitted). Because plaintiffs do not allege that the pay raises "target[ed] a suspect class or burden[ed] a fundamental right," we apply rational basis review. *Id.* The District's challenged action "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," and the plaintiffs bear the burden of showing that the pay raises were "not a rational means of advancing a legitimate government purpose." *Hettinga*, 677 F.3d at 478-79 (citation omitted).

We affirm the district court's dismissal of the plaintiffs' equal protection claim. As the district court observed, their claim boils down to "the fact that the District gave raises to

some District employees, but not to them." *Cannon*, 873 F. Supp. 2d at 283. Before the district court, the plaintiffs essentially conceded that there are two ways in which they are not similarly situated to the officers who received pay raises. The plaintiffs work for Protective Services and not the MPD, and they do not "perform the same functions, have the same duties and responsibilities, or the same background or experience, as these MPD employees." Pls. April 3, 2012 Opp. to Summ. J. (April 3, 2012), at 18-19.

In any event, the plaintiffs cannot show that it was arbitrary and irrational for the District to give raises to the senior MPD officers. As the District asserts, "[g]iven their differing responsibilities, the District may have a greater need and/or desire to re-hire and retain experienced officers for the MPD than it does for [Protective Services] and, therefore, may offer salary increases to attract and retain the former and not the latter." Appellee's Br. at 36. In other words, the District may have had greater use for the senior officers' services and a greater fear of losing them. That plausible explanation for the raises is more than sufficient to survive rational basis review.

## C

The plaintiffs claim that the District took two retaliatory actions against the exercise of their First Amendment right to bring this suit. The District fired plaintiff Louis Cannon, then chief of Protective Services, on February 8, 2012. Two days later, the plaintiffs did not receive their pay as expected through direct deposit. The District issued them paper paychecks instead.

As to the paycheck claim, the district court concluded that "receiving a single paycheck in the form of a paper check, rather than by direct deposit," would not be sufficient to "deter

a person of ordinary firmness" from exercising First Amendment rights. *Cannon*, 873 F. Supp. 2d at 286-87 (*quoting Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002)). On appeal, the plaintiffs do not contest this conclusion. They argue instead that summary judgment was improper because a jury should have determined the District's intent in issuing the paper paychecks. But the question of retaliatory intent was rendered irrelevant by the court's holding that the District's use of a paper paycheck in the place of direct deposit would not deter the exercise of First Amendment rights. The plaintiffs' challenge fails.

As to Cannon's firing, the District produced documentary evidence and an affidavit demonstrating that the director of the Department of Human Resources approved the firing on January 18, 2012, before the plaintiffs filed suit and for unrelated reasons. The district court therefore held that the plaintiffs could not establish that the lawsuit "was a substantial or motivating factor" in Cannon's firing. *Id.* at 285 (*quoting Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007)). The plaintiffs claim they needed additional discovery to demonstrate that the District's documentary evidence about Cannon's firing was fraudulent. They contend that the district court abused its discretion by failing to stay its summary judgment while the plaintiffs pursued that theory. *See* FED. R. CIV. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; [or] (2) allow time to obtain affidavits or declarations or to take discovery . . . .").

The plaintiffs, however, failed to comply with the requirements of Rule 56(d). "To obtain [Rule 56(d)] relief, the movant must submit an affidavit which states with sufficient particularity why additional discovery is necessary."

*Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (citation omitted).

> The affidavit must satisfy three criteria. First, it must outline the particular facts [the movant] intends to discover and describe why those facts are necessary to the litigation. Second, it must explain why [the movant] could not produce the facts in opposition to the motion for summary judgment. Third, it must show the information is in fact discoverable.

*Id.* at 99-100 (internal quotation marks and citations omitted). The plaintiffs submitted no Rule 56(d) affidavit, nor did they make any of the required representations discussed in *Convertino*. The district court did not abuse its discretion in deciding the District's summary judgment motion on the record before it.

IV

We affirm the district court's judgment on the constitutional claims, but reverse and remand as to the claim under the FLSA. Because the district court's decision not to exercise supplemental jurisdiction over the plaintiffs' D.C. law claims was premised on the dismissal of all federal claims from this case, *see Cannon*, 873 F. Supp. 2d at 287-88, we vacate that part of the district court's order dismissing the D.C. law claims and remand for further proceedings.

*So ordered.*